**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Philip Chris RADLICK,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Henry WILLERS,
Defendant-Appellant.**

Nos. 76–3222, 76–2882.

United States Court of Appeals,
Ninth Circuit.

Aug. 31, 1978.

Victor Sherman (argued) of Nasatir, Sherman & Hirsch, Los Angeles, Cal., Donald B. Marks (argued), Marks, Heaman & Brooklier, Beverly Hills, Cal., for defendants-appellants.

Darrell W. MacIntyre, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, GOODWIN and SNEED, Circuit Judges.

CHAMBERS, District Judge:

Appellants were convicted, after jury trial, of conspiracy to manufacture phencyclidine (PCP) in violation of 21 U.S.C. §§ 841(a)(1) and 846.

In December, 1975, California narcotics agents were alerted by officials of a San Luis Obispo chemical company that appellant Radlick had telephoned to place an order for 510 kilograms (about 1120 pounds) of piperidine, a precursor of PCP. The officials had known Radlick when he was a chemistry professor at a California university and they knew that he had resigned that post to take a position with a large pharmaceutical firm in New Jersey, where he presumably could have obtained the piperidine with less expense and less delay. Their suspicions were aroused when he changed his story about his reasons for ordering it from California, and when he instructed that "his people" (whom he would not identify) would pick it up, but they were to sign no documents for it. Radlick was told that the piperidine would be ordered from the East and shipped to San Luis Obispo via Los Angeles, and that he could take delivery in Los Angeles. He instructed that his people would pick it up in San Luis Obispo.

Appellant Willers and his sister arrived in San Luis Obispo in a rented truck and a controlled delivery was made to them, with State (and now federal) agents in surveillance. They transported the three 55-gallon barrels back to Los Angeles, some 200 miles away, and the piperidine was unloaded at their residence on West Brier. The next day codefendant Baker arrived on the scene and with Willers took steps to transfer the piperidine into smaller, more manageable cans, which were then taken to a garage on West Adams.

The agents learned that in 1972 Baker had been convicted on a guilty plea of manufacturing PCP; he was on probation for that offense at the time of these activities. A month before he had been arrested on another charge of manufacturing controlled substances and a search of his residence (then in West Hollywood) had disclosed a large amount of controlled substances and nearly $49,000 in cash; he was awaiting trial on that charge. He had also been arrested for possession of cocaine some weeks before. At the time of these activities he was observed coming and going from a residence which he occupied on Hawthorne Avenue.

Willers' main attack is on the search warrant that was issued for the search of the Willers' residence on West Brier, the Baker residence on Hawthorne, and the garage on West Adams.[1] His basic thrust, which we discuss below and which we find is without merit, is that probable cause was not shown in the affidavit in support of the search warrant. In making this argument, he attacks the method of proceeding by which federal agents permitted a State agent to obtain the search warrant and then make the argument that he is without standing to contest the issuance of the warrant, even though he would be entitled to do so under State law.[2] Appellant suggests

---

1. Appellant Radlick did not attack the search warrant in any of the three briefs filed by him on this appeal.

2. Although Willers clearly had standing to contest the search of his own residence on West Brier, he would under federal law have no standing to contest the other two searches as he claimed no possessory interest in them and was not present at the time of the searches. *Brown v. United States,* 411 U.S. 223, 93 S.Ct.

1565, 36 L.Ed.2d 208 (1973). Moreover, any claim of possessory interest in the products of the search would be unavailing as possession is not an essential element of the crime with which he was charged. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). He would, however, have standing under California law. *People v. Gale,* 9 Cal.3d 788, 108 Cal.Rptr. 852, 511 P.2d 1204 (1973).

that this procedure is reminiscent of the abuses that led to the repudiation of the "silver platter" doctrine in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

■ The warrant was clearly issued under State and not federal authority; it was issued by a California municipal judge on a California form, on the application of a California narcotics agent. Although a California Municipal Court judge is a "judge of a court of record" (Cal.Const., Art. VI, Sec. 12) and thus authorized to issue federal warrants under Rule 41, F.R.Cr.P., it is apparent that in this case he was not proceeding under Rule 41. There was no attempt to comply with its requirements; e.g., the application was not made by a federal law enforcement officer or attorney, it was not issued to such and the return was not to be made to a United States magistrate. The application and warrant have all the indicia of California, and not federal, process.

In contending that appellant is without standing to contest the searches, the government argues that the participation of federal officers in the investigation was so pervasive that it was in reality a "federal" investigation and thus a "federal warrant". The argument is a very dangerous one for the government to have made because the involvement of which they speak, in and of itself, made it incumbent on them to comply with the procedures set out in the Federal Rules. The participation in this case leaves no doubt but that the investigation was sufficiently "federal" as to require such compliance or to explain away noncompliance. *United States v. Burke,* 517 F.2d 377 (2nd Cir. 1975); *Navarro v. United States,* 400 F.2d 315 (5th Cir. 1968).

The State agent who applied for the warrant testified at the suppression hearing. He said that from the outset it was assumed that the prosecution would probably be in federal court and after Baker appeared in the case it was known that the prosecution would be there. Federal officers participated in all aspects of the investigation, they participated in the searches,

and they made the arrests at the conclusion of the searches. Charges were made in federal court and the prosecutions were in federal court.

■ The State agent testified that he was unfamiliar with federal practice and thought it would be "easier" to obtain a State warrant; he had the belief that evidence secured by a State warrant would be admissible in a federal court. While this may be indicative of his motivation, there is no explanation in the record for the federal agents' decision to proceed on a State warrant rather than comply with Rule 41. The Federal Rules are designed as standards for federal officers and it is the obligation of the officers to obey them, but that "policy is defeated if the federal agent can flout them . . . ." *Rea v. United States,* 350 U.S. 214, 217–18, 76 S.Ct. 292, 294, 100 L.Ed. 233 (1956). The exclusionary rule may be imposed by the courts to assure that the Rules are obeyed.

In *Navarro,* a Rule 41 search warrant was issued by a judge who was not authorized to do so under the Rule. Noncompliance of this fundamental nature led to the suppression of the evidence produced by the search. In *Burke* the court held that the noncompliance was not so fundamental as to justify suppressing the evidence. The court also found, however, that there was no deliberate attempt by the federal officers to flout Rule 41 but that they had acted out of confusion as to the proper method of proceeding. In reasoning that we find persuasive, the Second Circuit went on to state that suppression would be appropriate when:

"(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." 517 F.2d at 386–87.

Our concern is with this second horn. We are unable to determine from the record whether there was, or was not, intentional and deliberate disregard of Rule 41. We

cannot tell if there was an intent to flout the Rule or whether there was some acceptable explanation for the federal officers' method of proceeding in this case. We therefore remand the Willers case to the district court for a determination of this issue.

■ Other issues raised by Willers will be disposed of at this time, as will the issues raised by Radlick. The standing question presented by Willers' attack on the warrant need not be resolved as we have no difficulty finding probable cause for the issuance of the search warrant. The affidavit offered to support its issuance set forth in detail the suspicious circumstances of Radlick's method and manner of ordering the piperidine, and of Willers' method and manner of taking delivery. It also set forth in detail the knowledge of the agent as to Baker's extensive illegal narcotics activity, including the information of the contraband and cash found in another Baker residence less than two months earlier. The surveillance is described in sufficient detail. The affidavit also sets forth information as to the use of piperidine in the illicit manufacture of PCP.[3]

■ Appellant argues that piperidine has many legitimate uses and is not itself a "controlled substance" under federal law. This is true, but it would be unreasonable and naive for us to fail to recognize that piperidine is used in practically all (if not all) of the illicit manufacture of PCP. Since 1976 any sale must be reported to the California Department of Justice under Section 11100 of the Health and Safety Code. Moreover, the propensities of piperidine for use in the illicit manufacture of PCP have been so apparent to legitimate chemical suppliers that they very often report sales voluntarily to federal and State narcotics agencies. An officer charged with issuing search warrants is entitled to take note of piperidine's illicit use as a precursor of PCP and to make appropriate inferences in the light of other facts appearing in the affidavits offered to support issuance of the warrants. This affidavit stated probable cause for the search of all three addresses.

■ Willers attacks the denial of a motion in limine, and later rulings admitting evidence of a conversation between him and his codefendant Baker in mid-October, 1975, just days before the period described in the indictment for the duration of the conspiracy. Baker was allowed to testify that Willers asked him if he had any PCP, and that Baker told him that he was about to make some and then offered Willers some TCP (an analog of PCP), which Willers accepted. During the trial, and now on appeal, Willers has contended that he was an unknowing, innocent participant in the conspiracy. The evidence of the conversation was clearly probative of his "motive, opportunity, intent, preparation, plan, knowledge . . ." and admissible under Rule 404(b) of the Federal Rules of Evidence. There was no abuse of discretion in the district judge's refusal to exclude the evidence, as being more prejudicial than probative, under Section 403 of the Federal Rules of Evidence.

■ Appellant Radlick asserts that there was an improper limitation on cross-examination of Baker as to the circumstances of his guilty plea and decision to testify for the government. The extensive examination and cross-examination of Baker on this subject by the parties precludes any holding by us of an abuse of discretion. Radlick also urges that it was improper to refuse to admit evidence of the results of a polygraph test. The district judge listened to expert witnesses and concluded that there were "too many variable factors" affecting the reliability of the test. We find no abuse of discretion here.

---

**3.** The affidavit states that the affiant had been furnished information by a DEA chemist (whose credentials and expertise were then described) who concluded that "Piperidine is one of the precursor chemicals needed for the clandestine manufacture of Phencyclidine . . . and that he . . . has never seen or has no other knowledge of a clandestine laboratory operation producing Phencyclidine without utilizing the chemical Piperidine."

■ Radlick also argues that there was misconduct of the prosecutor. After objecting to a line of questioning on grounds of irrelevancy, the prosecutor concluded with the statement, "It's no defense". Appellant argues that this was an improper insertion by the prosecutor of his own opinion into the case. We suspect that the district judge's refusal to declare a mistrial or to admonish the prosecutor publicly was strongly influenced by a view that the "misconduct", if any, was of insignificant prejudice. That at least is the conclusion to which we come without hesitation.

■ Both appellants argue that there was something wrong with the manner in which one judge, who did not wish to try the case, offered it to another judge and when the other judge was unable to fit it into his schedule offered it to a third judge who was agreeable. This was not in conformity with a local rule of court but neither appellant has demonstrated that the procedure affected jurisdiction, neither offers any authority that he was entitled to the judge of his choice, and neither has been able to demonstrate how he was prejudiced.

Finally, both appellants argue that there was insufficient evidence to support the verdicts. The evidence was more than sufficient; this argument is without merit.

The conviction of appellant Radlick is affirmed. The conviction of appellant Willers is remanded for a court hearing, limited strictly to the questions raised by the failure of the federal officers to obtain the search warrant in compliance with Rule 41. While the questions are not the same here as they were in *United States v. Shotwell Mfg. Co.,* 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957), and *Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961), in those cases the Supreme Court authorized tinkering (without necessarily requiring a new trial) with convictions to assure that justice was done. With respect to the court hearing for Willers, on the method for further procedure, perhaps *Killian,* at page 244, 82 S.Ct. 302, and *Shotwell,* 355 U.S., at pages 244–45, 78 S.Ct. 245, provide good guides.