**SYCUAN BAND OF MISSION INDIANS, Plaintiff,**

v.

**Jim ROACHE, individually and as Sheriff of San Diego County; the County of San Diego, Dan Papp, individually and as a Deputy Sheriff of the County of San Diego; and Edwin L. Miller, Jr., individually and as District Attorney of San Diego County, Defendants.**

**BARONA BAND OF MISSION INDIANS, a/k/a Barona Group of the Captain Grande Band of Mission Indians, a federally-recognized Indian Tribe, and Viejas Band of Mission Indians a/k/a Viejas Group of the Captain Grande Band of Mission Indians, a federally-recognized Indian Tribe, Plaintiffs,**

v.

**Jim ROACHE, individually and in his official capacity as Sheriff of the County of San Diego; Dan Papp, individually and in his official capacity as a Deputy Sheriff of the County of San Diego; the County of San Diego, a political subdivision of the State of California, and Edwin L. Miller, Jr., individually and in his official capacity as District Attorney of the County of San Diego, Defendants.**

Nos. 91–1648 H (BTM), 91–1669 H (BTM).

United States District Court, S.D. California.

Feb. 24, 1992.

George Forman, San Francisco, Cal., for Sycuan Band of Mission Indians.

Art Bunce, San Diego, Cal., for Barona Band of Mission Indians.

Mark Beesley, Deputy County Counsel, San Diego, Cal., for defendants.

MEMORANDUM DECISION GRANTING THE PLAINTIFFS' MOTION FOR A DECLARATORY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION; AND DENYING THE DEFENDANTS' MOTION FOR A STAY OF THE INJUNCTION

HUFF, District Judge.

## INTRODUCTION

The plaintiffs are three Indian tribes, who operate gaming centers on their Res-

ervations. The plaintiffs brought this action against the County of San Diego, Sheriff Jim Roache, Deputy Dan Papp, and District Attorney Edwin Miller. In this motion, the plaintiffs seek summary judgment, declaratory relief, and a permanent injunction. The court grants the plaintiffs' motion for declaratory relief, and grants in part and denies in part their motion for injunctive relief. The court concludes the defendants lacked jurisdiction under 18 U.S.C. § 1162 and under the Indian Gaming Regulatory Act ("IGRA") to execute the October 1991 warrants and to criminally prosecute four individuals associated with the gaming centers. The defendants ask this court to stay the proceedings and argue the court is without jurisdiction to adjudicate the merits of the action or to issue injunctive relief. The court concludes it does have jurisdiction to proceed with the merits and to grant the appropriate relief, and, in the exercise of its discretion, chooses not to stay the action.

## FACTS

This case arises out of the execution of search warrants, issued by a San Diego municipal court, on the Sycuan, Barona, and Viejas Indian Reservations. On October 30, 1991, San Diego County Sheriff's deputies searched the Sycuan, Barona, and Viejas gaming centers, located on the respective Reservations, and seized numerous gaming devices, cash, and records. The gaming devices seized include numerous Autotab Model 101 electronic pull-tab dispensers. The District Attorney's Office subsequently commenced criminal prosecutions against individuals involved in the gaming centers for possession of a slot machine, in violation of California Penal Code § 330.1. These individuals are James Trant, Emmett Munley, Helen Chase, and Anthony Pico.

All three Bands are federally recognized Indian Tribes, with a governing body duly recognized by the Secretary of the Interior, and are located in San Diego County. Prior to the commencement of gaming operations on the Reservations, each Band was suffering severe economic depression. Specifically, the Bands faced high unemployment and were unable to provide basic governmental services to Tribal members and other Reservation residents. The revenue received from the gaming centers has been used to provide various governmental services and numerous other services, such as scholarships, nutritional programs, and housing rehabilitation.

This court has issued a temporary restraining order and a preliminary injunction against the defendants. The preliminary injunction prohibits the defendants from arresting persons for alleged violations of state gaming laws on the Sycuan, Barona, or Viejas Reservations; searching for or seizing gaming-related property allegedly in violation of state gaming laws used in connection with the operation of the gaming centers, unless the warrant complies with Federal Rule of Criminal Procedure 41(a) or is pursuant to cross-designation; implementing or continuing with criminal prosecutions against persons associated with the gaming centers for alleged violations of state gaming laws; and destroying or removing any of the seized property without prior court approval. The defendants have appealed the issuance of the preliminary injunction.

The plaintiffs now seek a partial summary judgment, including a permanent injunction and declaratory relief. Specifically, the plaintiffs seek a declaratory judgment that the defendants are without jurisdiction to enforce the state gaming laws on the Reservations, in the absence of a tribal-state compact, and seek a permanent injunction mirroring the preliminary injunction. The defendants raise several arguments in opposition to the plaintiffs' motion and contest the court's jurisdiction to adjudicate the merits of the action and to issue an injunction.

## DISCUSSION

I. STANDARDS FOR A SUMMARY JUDGMENT MOTION

To succeed on a motion for summary judgment, the movant must first demonstrate "there is no genuine issue as to any material fact and the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine dispute will exist if the facts indicate "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Concerning this motion, the facts are not in dispute. The parties do not dispute the circumstances surrounding the execution of the warrants or the attempts to criminally prosecute the four individuals involved with the gaming centers. Accordingly, the court will proceed to a discussion of the applicable law.

## II. DECLARATORY RELIEF

The plaintiffs first seek a declaratory judgment that the defendants are without authority to enforce state gaming laws on the Sycuan, Barona, or Viejas Indian Reservations. After thoroughly reviewing the case law, statutory language, principles of statutory construction, and the legislative history relevant to this case, this court concludes the plaintiffs are entitled to declaratory relief. The court notes, however, that its holding is limited to a conclusion that the defendants were without authority to execute the October 1991 warrants or to criminally prosecute James Trant, Helen Chase, Emmett Munley, and Anthony Pico. The court is not speculating as to future circumstances or as to whether the defendants would be without authority to enforce its gaming laws under any set of circumstances.

In its opposition to summary judgment, the defendants contend they did have jurisdiction to undertake the challenged activities and raise many of the same arguments rejected by this court in the order granting preliminary injunctive relief. The defendants' arguments are discussed in turn.

### A. JURISDICTION UNDER 18 U.S.C. § 1162 (PUBLIC LAW 280)

■ The defendants argue they had authority to execute the warrants at issue and to prosecute the four individuals pursuant to 18 U.S.C. § 1162. Under section 1162, Congress granted six states, including California, jurisdiction over offenses committed on Indian lands. Under this section, the state has jurisdiction over criminal/prohibitory laws, but does not have jurisdiction over civil/regulatory laws. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 208, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). The extent of the state's jurisdiction to enforce criminal/prohibitory laws is the same as that which it could exercise elsewhere in the state.

■ A state law will be deemed "criminal/prohibitory" and, thus, enforceable by a state on Indian land, if the state has indicated that the conduct at issue is against the state's public policy. *Id.* at 209, 107 S.Ct. at 1088. That a particular law is enforceable through criminal means does not necessarily indicate that the law is criminal/prohibitory. *Id.* at 211, 107 S.Ct. at 1089. To characterize the law at issue, the court must examine the nature of the activity and the overall legal context governing the activity. *See Confederated Tribes v. State of Washington,* 938 F.2d 146 (9th Cir.1991).

■ The defendants argue the analysis required to make this determination should focus on the particular laws prohibiting slot machines and not on California's gambling laws as a whole. The defendants' contention is without merit. The Ninth Circuit has held that, in order to protect Indian sovereignty from state interference, a court should resolve any doubts concerning the characterization of a law in favor of the Indians. *Id.* at 149. Thus, any doubts concerning the characterization of California's gambling laws in general or its laws relating to slot machines in particular should be resolved in favor of finding the laws to be civil/regulatory.

In *Cabazon,* the Supreme Court analyzed California's bingo laws and concluded the laws were civil/regulatory, rather than criminal prohibitory. In determining the characterization of the bingo laws, the Su-

preme Court analyzed California's gaming laws ·as a whole and did not merely focus on the limitations to the game of bingo within the state. The Court began its analysis by noting that "California does not prohibit all forms of gambling," and proceeded to list certain forms of gambling allowed. *Id.* at 210, 107 S.Ct. at 1089. Although the Court acknowledged the state prohibited certain forms of gambling, the Court noted California allows numerous forms of gambling, including "encouraging its citizens to participate in state-run gambling" by operating a state lottery, and permitting parimutuel horse-race betting. Based on the state's allowance of a "substantial amount of gambling activity," the Court concluded that "California regulates rather than prohibits *gambling in general and bingo in particular.*" *Cabazon,* 480 U.S. at 211, 107 S.Ct. at 1089 (emphasis added).

A recent Ninth Circuit decision also employed a broader analysis and did not focus solely on the laws prohibiting a certain activity. *Confederated Tribes,* 938 F.2d at 146–49. In *Confederated Tribes,* a tribal member was cited for speeding on the Indian reservation. The state argued it had jurisdiction to enforce its speeding laws on the reservation pursuant to section 1162. Specifically, the state argued its speeding laws were criminal/prohibitory because the state prohibits speeding in all circumstances and makes no exceptions to this prohibition. The Ninth Circuit concluded the state's analysis was erroneous. The appropriate inquiry is whether the "prohibited activity is a small subset of a larger permitted activity or whether all but a small subset of a basic activity is prohibited." *Id.* at 149. The court held the state's speeding laws were civil/regulatory because, while speeding is prohibited, driving is generally permitted within the state. Therefore, the speeding laws, a subset of the state's more general driving laws, were civil/regulatory and unenforceable under section 1162.

Although California prohibits the operation of slot machines in most instances, California permits a great· deal of other gaming within the state. California not only allows this activity, but actively encourages certain forms of gaming. For example, the state sponsors and promotes a state lottery. Because California permits a substantial amount of gaming and actively encourages and benefits from the gaming, this court concludes the slot machine prohibition is a civil/regulatory law.

The defendants present several cases which they contend indicate that this court should adopt a narrower analysis. These cases are distinguishable. First, *United States v. Marcyes,* 557 F.2d 1361, 1362 (9th Cir.1977), involved a state's complete prohibition of the possession of fireworks. The laws prohibiting fireworks were not a subset of a larger, permitted activity. The state did not permit some types of fireworks and absolutely prohibit others. Rather, the state completely prohibited the private possession of fireworks. Thus, consistent with the Court's broader analysis in *Cabazon,* the firework laws were held to be criminal/prohibitory. Second, in *Pueblo of Santa Ana v. Hodel,* 663 F.Supp. 1300 ·(D.D.C.1987), the court characterized New Mexico's laws prohibiting greyhound racing as criminal/prohibitory. Contrary, however, to California's gambling laws, New Mexico prohibits almost all forms of gambling. Therefore, New Mexico's gambling laws in general may be classified as criminal/prohibitory. In sum, California's laws governing. slot machines are characterized as civil/regulatory. Accordingly, the defendants lacked authority under section 1162 to enforce California's gaming laws on the Reservations by executing the October 1991 warrants and by criminally prosecuting the four individuals.

**B. JURISDICTION UNDER THE · IGRA**

█ Even if section 1162 granted the defendants jurisdiction to perform the challenged activities, the Indian Gaming Regulatory Act ("IGRA") preempted the defendants' jurisdiction under section 1162. The court further concludes the defendants did not have the authority to enforce its gaming laws in the present case · under the IGRA because a. tribal-state compact did

not permit the defendants to enforce its slot machine laws on the Sycuan, Barona, and Viejas Reservations. Thus, the court does not rely solely on its interpretation of *Cabazon* to conclude the defendants lacked authority to execute the October 1991 warrants and to criminally prosecute the four individuals.

As an initial matter, the defendants contend the more stringent standard of repeal by implication applies, rather than preemption. The court need not resolve this argument because, even under the more stringent standard, the court concludes the IGRA precludes the defendants from enforcing its gaming laws pursuant to section 1162. A federal statute will not repeal a prior federal statute unless no reasonable construction can give effect to both statutes. *United States v. Jones*, 607 F.2d 269, 272 (9th Cir.1979). Section 1162 can be read as compatible with the IGRA. Under section 1162, California retains the ability to enforce its criminal/prohibitory laws. The IGRA simply governs the enforcement of state gaming laws and prohibits the enforcement of these laws in the absence of a tribal-state compact.

In determining whether the IGRA preempts state authority under section 1162, the court does not employ the typical preemption analysis. Because of the "firm federal policy of promoting tribal self-sufficiency and economic development," a finding of preemption does not require an express statement of congressional intent to preempt. *Crow Tribe of Indians v. State of Montana*, 819 F.2d 895, 898 (9th Cir. 1987). A federal statute will be preemptive if the "state law conflicts with the purpose or operation of a federal statute." *Id.* As discussed below, the IGRA creates a comprehensive jurisdictional framework for the regulation of gaming activities on Indian lands. The regulation of gaming by states outside the framework of the IGRA would frustrate this framework and Congress's careful balancing of the competing interests involved in Indian gaming.

### (1) CRIMINAL PROSECUTIONS

■ In the IGRA, Congress addressed the state's authority to criminally prose-cute individuals for alleged violations of its gaming laws made applicable to Indian lands under the IGRA. Section 1166(d) provides:

> The United States shall have *exclusive jurisdiction* over criminal prosecutions of violations of state gambling laws that are made applicable under this section to Indian country, unless an Indian tribe pursuant to a Tribal–State compact ... has consented to the transfer to the state of criminal jurisdiction with respect to gambling on the lands of the Indian tribe.

18 U.S.C. § 1166(d) (emphasis added). Despite this language, the defendants argue the state retains the authority to criminally prosecute individuals for violations of the state's gaming laws pursuant to section 1162.

Even assuming that California has the authority to enforce its gaming laws under section 1162 consistent with *Cabazon*, the defendant's argument that it has jurisdiction notwithstanding section 1166(d) is without merit. The defendant's argument ignores the plain language of the statute and principles of statutory construction.

It is a well-established rule of construction that a more specific statutory section governing jurisdiction controls over a more general statutory section. *California v. Yeutter*, 887 F.2d 908, 911 (9th Cir.1989). "The rule that a precisely drawn, detailed statute preempts more general remedies flows from the Congressional intent to carve out from the broader scheme a specific exception for this particular type of claim." *Id.* The defendant suggests that sections 1162 and 1166(d) can be harmonized by concluding that both state and federal authorities may prosecute violations of criminal/prohibitory laws under sections 1162 and 1166(d), but section 1166(d) limits the prosecution of civil/regulatory laws to the federal government. This construction would render superfluous Congress's express words and its comprehensive statutory scheme governing Indian gaming. A more appropriate and common-sense harmonization of the two statutory sections is simply that the state retains criminal juris-

diction under section 1162 to prosecute violations of all criminal/prohibitory laws other than those relating to gambling. Thus, pursuant to section 1162, the state has the authority to criminally prosecute homicides, drug offenses, and a variety of other criminal offenses. However, only the United States has jurisdiction to prosecute violations of the state's gambling laws on Indian lands.

The defendant's argument also ignores other well-established principles of statutory construction. First, the starting point of analysis is not the assumption that the state has jurisdiction, but rather that the state is without jurisdiction over the reservation. *Confederated Tribes*, 938 F.2d at 149; *Barona Group v. Duffy*, 694 F.2d 1185, 1190 (9th Cir.1982). Historically, state jurisdiction over reservations has been strongly disfavored in order to protect Indian sovereignty from state interference. Second, any ambiguities in the statutory sections should be resolved in favor of the Indians and, thus, against the authority of the state to exercise jurisdiction. *Barona Group*, 694 F.2d at 1190. Third, this court is obligated to give ordinary meaning to the words chosen by Congress. *Yeutter*, 887 F.2d at 911. The court must assume that when Congress chose to use the words "exclusive jurisdiction," Congress meant exactly that. Therefore, Congress did not intend to confer concurrent state jurisdiction by stating that the United States has "exclusive jurisdiction" over criminal prosecutions of offenses under the IGRA. The defendants, therefore, are without jurisdiction to criminally prosecute James Trant, Emmett Munley, Helen Chase, and Anthony Pico.

### (2) EXECUTION OF WARRANTS

■ The defendants next argue that, even if they are without jurisdiction to criminally prosecute the four individuals, they retain the authority to engage in preliminary law enforcement activities, such as searching for and seizing illegal devices under state law. To determine the extent to which the defendants can exercise jurisdiction beyond criminal prosecutions, the court will examine the statutory framework of the IGRA, the case law addressing the IGRA, and the legislative history of the IGRA.

In October 1988, Congress enacted the IGRA for the purpose of providing a statutory basis for Indian tribes to engage in gaming as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments; to provide a statutory basis for tribal regulation of gaming adequate to shield it from organized crime and other corrupting influences; to ensure the tribe is the primary beneficiary of the gaming; and to assure gaming is conducted fairly and honestly by both the operators and the players. The statute establishes an independent federal regulatory authority and federal standards to govern gaming on Indian lands. The statute declares this is necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue. 25 U.S.C. §§ 2701–2721.

Under the IGRA, gaming is categorized as either class I, class II, or class III. 25 U.S.C. § 2703. Class I gaming consists of social games for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of or in connection with tribal ceremonies or celebrations. *Id.* at § 2703(6). Class I gaming on Indian lands is within the exclusive jurisdiction of the Indian tribes. *Id.* at § 2710(a)(1). Class II gaming consists of bingo, pull-tabs, lotto, punch boards, tip jars, and certain card games permitted under state law. *Id.* at § 2703(7)(A)(i). Class II gaming continues to be within the jurisdiction of the Indian tribes, but is subject to the provisions of the IGRA. *Id.* at § 2710(b)(1). Class III gaming consists of all other forms of gaming. *Id.* at § 2703(8). Class III gaming activities are lawful on Indian lands only if such activities are authorized by a tribal ordinance, are located in a state that permits such gaming, and are conducted in conformance with a tribal-state compact. *Id.* at § 2710(d)(1).

With respect to class III gaming, Congress federalized state law. Section 1166(a) of the IGRA provides:

[F]or purposes of federal law, all state laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the state.

18 U.S.C. § 1166(a). Thus, the content of federal law under the IGRA for the regulation of class III gaming is defined by state law. The incorporation of state law, however, does not necessarily indicate that Congress intended to grant concurrent jurisdiction to the states to enforce the new federal rights. *See, e.g., Minnesota v. United States,* 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1938); *De Sylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). Rather, by federalizing state law, Congress chose to incorporate existing law rather than create a uniform body of law governing each of the states.

The federalization of state law appears to have been an important part of the compromise given to the states by Congress when balancing the interests implicated by Indian gaming. In the legislative history, Congress first notes that Congress, and not the courts as in *Cabazon,* should strike the appropriate balance to determine the extent to which the states can enforce their gaming laws on reservations. S.Rep. No. 446, 100th Cong., 2d Sess. 3, *reprinted in,* U.S.Code Cong. & Admin.News 1988, 3071, 3072–3073. In striking this balance, Congress acknowledged the interest of the states to enforce their gaming laws on reservations and, particularly, to prohibit gaming that would be illegal if performed elsewhere in the state. Congress also was aware of the concern of the states and the Department of Justice ("DOJ") over the potential for the infiltration of organized crime and other criminal elements. The DOJ argued the states had the expertise and the experience to regulate and enforce its gaming laws on the reservations. Congress, however, also acknowledged the tribes' strong aversion to any extension of state jurisdiction onto the reservations. With regard to the tribes' interests, Congress acknowledged the

well-established principles of Federal–Indian law ... that unless authorized by an act of Congress, the jurisdiction of state governments and the application of state laws do not extend to Indian lands [and] that even when Congress has enacted laws to allow a limited application of state law on Indian lands, the Congress has required the consent of tribal governments before state jurisdiction can be extended to tribal lands.

*Id.* U.S.Code Cong. & Admin.News 1988, at 3075. In striking a balance between the interests of the states and the tribes, Congress sought to preserve these principles. *Id.*

Congress balanced these competing interests and developed a jurisdictional framework for the regulation of gaming activities on Indian land. The cases addressing the IGRA have concluded the IGRA provides for state jurisdiction only when the state enters into a compact with the tribe. The Tenth Circuit has concluded that "the very structure of the IGRA permits assertion of state civil or criminal jurisdiction over Indian gaming *only* when a tribal-state compact has been reached to regulate class III gaming." *Keetoowah Indians v. State of Oklahoma,* 927 F.2d 1170, 1177 (10th Cir.1991). In the absence of a compact, the IGRA leaves "no other direct role for such state gaming enforcement." *Id.* The only other published case addressing the IGRA is in accord. *See Lac du Flambeau Band v. Wisconsin,* 743 F.Supp. 645, 646 (W.D.Wis.1990).

The legislative history also supports the proposition that a state may exercise jurisdiction over Indian gaming only by entering into a compact with the tribe. The legislative history provides:

[U]nless a tribe affirmatively elects to have state laws and state jurisdiction extend to tribal lands, the Congress will not unilaterally impose or allow state jurisdiction on Indian lands for the regulation of Indian gaming activities.

The mechanism for facilitating the unusual relationship in which a tribe might affirmatively seek the extension of state jurisdiction and the application of state laws to activities conducted on Indian land is a tribal-state compact. In no instance, does S. 555 contemplate the extension of state jurisdiction or the application of state laws for any other purpose.

S.Rep. No. 446, 100th Cong., 2d Sess. 5–6, *reprinted in*, U.S.Code Cong. & Admin.News 1988, 3075–76.

The balance struck by Congress under the IGRA appears to be that the state laws governing gaming apply, for the most part, with the same force and effect the laws would have elsewhere in the state. Thus, by federalizing state law, the states could generally define the boundary between legal and illegal gaming, and could be assured that activities that would be illegal if performed outside the reservation boundaries would also be illegal within the reservation boundaries. The definition of legal versus illegal gaming, however, is the limit of state authority over Indian gaming in the absence of a compact. Under the IGRA, the tribes can be assured that the states will not have jurisdiction over the reservations to enforce their gaming laws unless the tribe chooses to allow state jurisdiction by negotiating a tribal-state compact. Because the defendants did not enter into a compact with the plaintiffs to permit the defendants to exercise jurisdiction over their gaming, the defendants were without authority to execute the October 1991 warrants on the Sycuan, Barona, and Viejas Reservations.

The defendants, however, present two arguments in support of their contention that the IGRA allows the state to engage in preliminary law enforcement activities. The defendants' arguments are without merit.

### (a) Statutory Interpretation

First, the defendants contend that the term "criminal prosecution" should be narrowly interpreted by the court to exclude state jurisdiction only over that phase of a state's criminal jurisdiction. The defendants' argument is contrary to well-established principles of construction. Any ambiguities in the IGRA should be resolved in favor of the Indians and, thus, against the authority of the state to exercise any jurisdiction. *Barona Group*, 694 F.2d at 1190. The historical federal concern over Indian sovereignty requires this court to resolve any doubts against the exercise of state jurisdiction. *Confederated Tribes*, 938 F.2d at 149.

### (b) Law Governing Search Warrants

The defendants next argue the warrant was valid as a state warrant and, thus, the evidence seized would be admissible in a subsequent federal prosecution. The warrant clearly was not valid under Federal Rule of Criminal Procedure 41(a). This Rule allows a state court to issue a warrant for an alleged violation of federal law. However, the warrant may only be issued upon the request of a federal law enforcement officer or attorney. *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir.1978). The October 1991 search warrants were not issued at the request of any federal officer or attorney and, therefore, the search warrants were not valid federal search warrants.

The October 1991 warrants also were not valid as state warrants. A state is without authority to engage in preliminary law enforcement activities if the state is without jurisdiction to prosecute a violation. *See* Clinton, *Criminal Jurisdiction over Indian Lands*, 18 Ariz.L.Rev. 503, 572–74 (1976). This rule is consistent with the strong federal policy of minimizing state interference in tribal life. *Id.* The precise issue presented by the defendants' argument is whether the state may issue and execute a warrant, not complying with Rule 41(a), to search for and seize evidence if the state is without authority to prosecute because of exclusive federal jurisdiction.

The Tenth Circuit has addressed the authority of the states to execute search warrants and to arrest individuals on reservations. In *United States v. Baker*, 894 F.2d

1144 (10th Cir.1990), state authorities executed a state search warrant on a reservation. The evidence seized was later turned over to federal authorities for use in a federal prosecution. The Tenth Circuit concluded the evidence should have been suppressed because the search warrant was invalid. The search warrant was not valid as a federal warrant because not obtained pursuant to Rule 41(a). The search warrant also was not valid as a state warrant because the state had no jurisdiction over the reservation to enforce its laws, including the execution of a search warrant, unless Congress consented to the state's jurisdiction.

A second case, *Ross v. Neff*, 905 F.2d 1349 (10th Cir.1990), involved an arrest on Indian lands. The Tenth Circuit held the arrest was illegal because, again, the state was without jurisdiction to enforce its laws on the Indian lands.

Further, under general principles of search and seizure, "when a judicial authority ... issues a search warrant, ... it is presumed that the alleged offense ... is within the limits of the issuing authority." J. Varon, Searches, Seizures and Immunities 408 (2d ed. 1974).

> The majority view is that jurisdiction is necessary to the protection of the constitutional rights of the individual. The decisions uniformly hold that an issuing authority can only take cognizance of offenses that are within the purview of his authority.... The lack of jurisdiction by the issuing authority to issue a search warrant is not to be considered as a mere technicality

*Id.* at 409. As a general principle, a judicial officer's writ cannot run outside the officer's jurisdiction. *See United States v. Strother*, 578 F.2d 397 (D.C.Cir.1978). Thus, the October 1991 warrants were invalid because the state court did not have the authority to issue the warrants.

■ California law also indicates the defendants acted beyond their authority by executing the October 1991 warrants on the Sycuan, Barona, and Viejas Reservations. California Penal Code § 830.1 defines the territorial limitations of peace officers, including sheriffs and their deputies, in enforcing the law. The peace officers's authority extends to "any public offense ... within the political subdivision which employs" the sheriff. If the sheriff acts outside this territorial jurisdiction, the sheriff has no law enforcement powers other than those that any private citizen would have. *People v. Pina*, 72 Cal.App.3d Supp. 35, 39, 140 Cal.Rptr. 270, 272 (1977). The reservations at issue certainly were not within the political subdivision which employed the sheriff or his deputies. The defendants, therefore, acted beyond their authority by executing the October 1991 search warrants.

## III. PERMANENT INJUNCTION

The plaintiffs next seek a permanent injunction prohibiting the defendants from arresting persons for the alleged violations of state gaming laws on the Sycuan, Barona, or Viejas Reservations; searching for or seizing gaming-related property allegedly in violation of state gaming laws used in connection with the operation of the gaming centers, unless the warrant complies with Federal Rule of Criminal Procedure 41(a) or is pursuant to cross-designation; implementing or continuing with criminal prosecutions against persons associated with the gaming centers for alleged violations of state gaming laws; and destroying or removing any of the seized property without prior court approval.

To determine whether to issue a permanent injunction, the court, of course, must conclude that the plaintiff prevails on the merits. *LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir.1985). The court, however, must consider additional factors. First, the plaintiffs must establish that they face the likelihood of substantial and immediate irreparable injury in the absence of a permanent injunction, and that the remedies at law are inadequate to protect their interests. *Id.* The court may also balance the equities involved in the particular case. *Id.*

As discussed above, the court concludes the plaintiffs prevail on the merits with regard to the defendants' lack of jurisdiction to execute the October 1991 warrants

or to criminally prosecute the four individuals. After balancing the equities and examining the risk of injury the plaintiffs face in the absence of a permanent injunction, the court grants in part and denies in part the plaintiffs' request for a permanent injunction.

■ With respect to the pending criminal prosecutions, the defendants are without jurisdiction to continue the prosecutions. Section 1166(d) of the IGRA clearly states that the United States has "exclusive jurisdiction over criminal prosecutions of violations of state gambling laws that are made applicable under this section to Indian country...." The court believes it would be unnecessary to expend the amount of time and resources necessary to prosecute the four individuals when any judgment would lack force due to a lack of jurisdiction. Further, the four individuals should not continue to be threatened with the many adverse consequences of a pending criminal prosecution. Therefore, this court permanently enjoins the pending criminal prosecutions of James Trant, Emmett Munley, Helen Chase, and Anthony Pico.

■ The court, however, declines to permanently enjoin the defendants from arresting individuals or searching for and seizing evidence in the future for alleged violations of its gaming laws. The plaintiffs have not presented facts indicating that the defendants intend to enter their Reservations in the future to enforce the gaming laws or to arrest other persons associated with the gaming centers for alleged violations of state gaming laws. That the defendants may again attempt to enforce the gaming laws is merely speculation. The equitable remedy of a permanent injunction requires the plaintiffs to establish a "real or immediate threat" that the plaintiffs will be wronged again. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983). Further, a permanent injunction could greatly affect the ability of state law enforcement officials to carry out their duties. The court will not speculate as to all future circumstances and tie the hands of law enforcement officials from upholding the law under any and all factual circumstances. Accordingly, the plaintiffs' request for a permanent injunction prohibiting the defendants from engaging in preliminary law enforcement activities in order to enforce the state gaming laws is denied.

The court notes, however, that it has continuing jurisdiction over the action. If the defendants do take further action to enforce the gaming laws during the pendency of this action, the plaintiffs may obtain an expedited hearing for a temporary restraining order. In addition, further actions by the defendants to enforce the gaming laws may adversely impact a good faith defense in the pending or future actions under 42 U.S.C. § 1983.

## IV. JURISDICTION

Finally, the defendants argue this court lacks jurisdiction to resolve the merits of the case and to issue any injunctive relief. The defendants' arguments are without merit.

### A. ANTI–INJUNCTION ACT

■ The defendants contend for the first time in this case that the Anti–Injunction Act prohibits this court from enjoining the pending criminal prosecutions against James Trant, Emmett Munley, Helen Chase, and Anthony Pico. Although the Anti–Injunction Act applies to the injunction issued by this court restraining the District Attorney, the injunction falls within one, if not two, exceptions to section 2283. The court, however, is aware of the importance of the Anti–Injunction Act and the great deference owed the state courts. Nevertheless, the court feels its injunction clearly falls within the exceptions based on Ninth Circuit precedent, the language of section 1166(d), and the need to recognize the tribes as sovereigns. The injunction, therefore, properly restrains the state court from proceeding with the criminal trials against the four individuals.

The Anti–Injunction Act prohibits federal courts from enjoining state court proceedings unless the injunction falls within three exceptions. 28 U.S.C. § 2283. Section 2283 does not affect the jurisdiction of a

federal court, but rather is a rule of comity designed to promote harmony between federal and state courts. *Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 526, 106 S.Ct. 768, 773, 88 L.Ed.2d 877 (1986). A federal court may restrain state court proceedings only if an injunction is (1) "expressly authorized by Congress," (2) "necessary in aid of its jurisdiction," or (3) necessary "to protect or effectuate its judgments." *White Mountain Apache Tribe v. Smith Plumbing Co.*, 856 F.2d 1301, 1304 (9th Cir.1988). These exceptions are to be narrowly and strictly construed. *Amalgamated Clothing Workers v. Richman Brothers*, 348 U.S. 511, 514, 75 S.Ct. 452, 454, 99 L.Ed. 600 (1955).

Section 2283 applies to this action. The injunction expressly restrains the District Attorney, but does not expressly restrain the state court itself. Nevertheless, the prohibition of section 2283 applies when the injunction is directed at a party to a state court proceeding. *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). In other words, the prohibition of section 2283 may not be avoided by framing an injunction as a restraint against a party rather than as a restraint directly against the state court. *Id.*

The injunction issued by this court falls within the "necessary in aid of its jurisdiction" exception. The Ninth Circuit has concluded an injunction issued against a state court proceeding fell within this exception in order to protect tribal sovereignty. *White Mountain*, 856 F.2d at 1304–05.

In *White Mountain*, the Indian Tribe undertook to build four housing projects and entered into a contract with Aetna, requiring Aetna to provide performance bonds for each project. As part of the contract, Aetna required the Tribe to indemnify Aetna in the event the Tribe, as general contractor, failed to pay all labor and supply costs involved in the projects. A subcontractor subsequently brought suit against Aetna in state court to recover for unpaid plumbing supplies.

The district court enjoined the state proceedings. The Tribe argued that, because of its contract with Aetna, an action against Aetna in state court would necessarily hale the Tribe into state court to adjudicate matters exclusively within the jurisdiction of the tribal court. The Tribe argued such a result impermissibly infringed upon the Tribe's federally protected right of self-government and violated federal Indian policy of immunity from suit in state court.

The Ninth Circuit concluded the injunction did not violate the Anti–Injunction Act, because the injunction fell within the "necessary in aid of its jurisdiction" exception. The Ninth Circuit reasoned the district court had the authority to issue the injunction to "preserve the integrity of tribal claims." *Id.* This conclusion acknowledges the well-established principle of Federal–Indian law that, unless authorized by an act of Congress, the jurisdiction of state governments and the application of state laws do not extend to Indian lands.

Similarly, pursuant to 18 U.S.C. § 1166(d), Congress has granted exclusive federal jurisdiction over criminal prosecutions involving violations of state gaming laws made applicable to Indian Reservations pursuant to the IGRA. To preserve primary federal jurisdiction over Indian law and, specifically Indian gaming law, it is necessary for this court to enjoin the pending criminal prosecutions.

The injunction also satisfies the test enunciated by the Supreme Court to determine whether an injunction falls within the "authorized by an Act of Congress" exception. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Under the *Mitchum* test, the act of Congress must (1) "have created a specific and uniquely federal right or remedy, enforceable in a federal court," and (2) can "be given its intended scope only by stay of the state court proceeding." *Id.* at 237–38, 92 S.Ct. at 2160. The Supreme Court subsequently narrowed the *Mitchum* test in *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). To fall within the exception, the act of

Congress also must "necessarily interact with or focus upon a state judicial process." *Id.* at 640–41, 97 S:Ct. at 2892.

The act of Congress authorizing this injunction is the IGRA. This Act created a unique and comprehensive scheme of regulating and enforcing gaming on Indian lands. A primary purpose of the IGRA was to create a jurisdictional framework for the regulation of gaming activities on Indian land and, specifically, to delineate the boundaries of state authority over this area. In the IGRA, Congress specified the areas over which the states could exercise authority over Indian gaming. Included within this scheme, Congress provided exclusive federal jurisdiction over criminal prosecutions. To allow a state to ignore this jurisdictional framework by exercising jurisdiction over an area governed by exclusive federal jurisdiction, would clearly frustrate the purposes of the IGRA. Therefore, the injunction also falls within this exception.

## B. JURISDICTION OF DISTRICT COURT PENDING APPEAL

■ The defendants next contend this court lacks jurisdiction to continue with the merits of the action because the defendants have appealed the issuance of the preliminary injunction. The court rejects the defendants' argument.

The general and well-established rule is that, upon the filing of a timely notice of appeal, jurisdiction is immediately transferred from the district court to the appellate court. *See, e.g., Hovey v. McDonald,* 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888 (1883). During the pendency of the appeal, the district court retains only the limited jurisdiction to assist the appellate court in its resolution of the appeal. *United States v. Lafko,* 520 F.2d 622, 627 (3d Cir.1975). The rule derives from the desire to avoid the confusion and inefficiency that might result from two different courts deciding the same issue at the same time. *Masalosalo by Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956 (9th Cir.1983). To promote efficiency, the Ninth Circuit construes this

rule as one of judicial prudence, rather than an absolute rule. *Id.*

A well-recognized exception to this general rule of divestiture of jurisdiction is appeals from orders granting or denying jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). In an early case, the Ninth Circuit concluded an appeal from an interlocutory order does not divest the district court of jurisdiction to continue with other phases of the trial. *Phelan v. Taitano,* 233 F.2d 117 (9th Cir.1956). Numerous other courts also have concluded an appeal of a preliminary injunction does not prevent the district court from proceeding with the action on the merits. *Shevlin v. Schewe,* 809 F.2d 447 (7th Cir.1987); *United States v. City of Chicago,* 534 F.2d 708, 711 (7th Cir.1976); *Thomas v. Board of Educ.,* 607 F.2d 1043, 1047 n. 7 (2d Cir. 1979); *Watkins v. United States Army,* 541 F.Supp. 249, 252 (W.D.Wa.1982); *Robb Container Corp. v. Sho–Me Co.,* 566 F.Supp. 1143, 1157 (N.D.Ill.1983); *United Parcel Svc. v. United States Postal Serv.,* 475 F.Supp. 1158 (E.D.Pa.1979); *see also* 9 Moore's Federal Practice ¶ 203.11, at 3–54 (2d ed. 1991). The reasoning for this exception is delay and inefficiency would result if proceedings in the district court were stayed. *City of Chicago,* 534 F.2d at 711. The court, therefore, does have jurisdiction to proceed with the merits of the case.

■ The defendants also ask this court to stay the preliminary injunction. The court has jurisdiction to modify or stay the preliminary injunction pending the appeal. Federal Rule of Civil Procedure 62(c) provides:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal....

Federal Rule of Appellate Procedure 8(a) further provides the district court with the authority to stay the injunction pending an appeal.

The defendants have failed to present this court with sufficient reasons for stay-

ing the preliminary injunction. The plaintiffs have presented evidence that a delay in the resolution of the merits would cause severe economic hardships. The defendants have not pleaded facts indicating they would suffer similar hardships. The defendants are not prohibited from enforcing their gaming laws. Rather, the defendants are simply required to comply with the law by obtaining cross-designation or approval from federal officers pursuant to Rule 41(a). A stay of the injunction also would not ultimately advance the progress of this litigation. Therefore, the defendants' request is denied.

## C. RES JUDICATA

■ The defendants contend res judicata precludes the Barona plaintiffs from seeking relief from this court. The defendants contend a prior suit brought by the Barona Tribal Bingo against the County of San Diego bars the present action. In 1989, the Barona Tribal Bingo brought suit against the County, alleging the County was without jurisdiction to enforce state gaming laws on the Barona Reservation. The district court agreed and granted summary judgment for the County.

Res judicata precludes parties and their privies from relitigating issues that were or could have been raised in a prior action. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). The doctrine of res judicata extends only to facts and conditions existing at the time of the prior judgment. *Clark v. Yosemite Community College*, 785 F.2d 781, 789 (9th Cir.1986). Res judicata does not bar a subsequent action based on facts or conduct occurring since the time of the prior judgment. *Id.*

The Barona plaintiffs' current action is not barred by res judicata, because this action involves an entirely different set of circumstances. The prior case involved the execution of search warrants in 1989. The present case involves a subsequent and unrelated search and seizure. Further, the defendants have not presented any facts indicating that the Barona plaintiffs are the same party that litigated the prior action or were privies to that party. The only plaintiff in the prior action was Bingo Enterprises, Incorporated. The plaintiff in this action is the Barona Band of Mission Indians. Therefore, res judicata does not bar the present action.

## D. *YOUNGER* ABSTENTION

■ Finally, the defendants argue the *Younger* abstention doctrine requires this court to abstain in order to allow the criminal prosecutions to continue. The *Younger* doctrine does not require this court to abstain from determining the merits of the action.

In applying the *Younger* doctrine, federal courts must examine (1) the nature of the state proceedings to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings. *Partington v. Gedan*, 880 F.2d 116, 121 (9th Cir.1989). The *Younger* doctrine, however, applies only to actions brought by the individuals being prosecuted in a state court. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975). In other words, a "state defendant's inability to bring a federal action because of a pending state prosecution does not affect other potential federal plaintiffs who are not themselves the subject of pending prosecution." *Ripplinger v. Collins*, 868 F.2d 1043, 1049 (9th Cir.1989).

This court is aware of the vital interests served by the *Younger* doctrine and the proper respect and deference owed the state court. The court also acknowledges the strong interest of the state to enforce its gaming laws and to prevent the infiltration of organized crime and other criminal elements into gaming permitted within the state's geographical boundaries. Nevertheless, this case is unique because Congress has clearly stated that the state courts are without jurisdiction to criminally prosecute individuals for alleged violations of gaming laws made applicable under the

IGRA. 18 U.S.C. § 1166(d). Further, the plaintiffs in this case are not the individuals the state wishes to prosecute. Accordingly, the defendants' request for abstention is denied.