**POARCH BAND OF CREEK INDIANS, Plaintiff,**

v.

**STATE OF ALABAMA and Guy Hunt, Governor of the State of Alabama, Defendants.**

Civ. A. No. 91–0757.

United States District Court, S.D. Alabama, S.D.

Feb. 20, 1992.

**1550**

Richard Dorman and David Peeler, Mobile, Ala., for plaintiff.

Fred Fohrell, Montgomery, Ala., for defendants.

### ORDER

HOWARD, Chief Judge.

This matter is before the Court on the "Motion to Dismiss" [Doc. # 24] filed by the defendant Guy Hunt, Governor of the State of Alabama (the "Governor"). Because the Court finds that its assertion of jurisdiction over the Governor in this case would violate the Eleventh Amendment, the Governor's Motion to Dismiss is GRANTED.

### I. PROCEDURAL HISTORY OF CASE

This action began with the filing of a Complaint by the Poarch Band of Creek Indians (the "Tribe") on September 11, 1991, seeking declaratory and injunctive relief as redress for alleged violations of the Indian Gaming Regulation Act, 25 U.S.C. § 2701 *et seq.* ("IGRA"). [Doc. # 1] The State responded by filing a Motion to Dismiss based on the Eleventh Amendment to the Federal Constitution [Doc. # 6], which the Court granted on October 30, 1991. [Doc. # 22]; *See* 776 F.Supp. 550 (S.D.Ala. 1991). The Court hereby adopts and incorporates all of its previous order.

Shortly after the Court granted the State's Motion to Dismiss, the Governor responded by filing his own Motion to Dismiss. Both the Governor and the Tribe filed briefs on the motion and this Court held a hearing on the matter on December 5. Five days later the plaintiff filed a Motion to Amend its Complaint to state a cause of action under 42 U.S.C. § 1983, which the Court granted on January 24, 1992. Because of the lateness of the amendment, the Court deemed the Governor's Motion to Dismiss to be refiled in light of the Second Amended Complaint and requested the parties to brief any issues implicated by the amendment which had not been already addressed by the briefs and oral argument in connection with the Motion to Dismiss the First Amended Complaint. The parties have now done so.

### II. JURISDICTION UNDER THE IGRA

Having already ruled that Congress could not constitutionally abrogate the State of Alabama's sovereign immunity under the IGRA, and that the State of Alabama did not consent to this suit, these rulings are equally applicable with respect to its official agent, the Governor. However, the Tribe urges that this suit may be maintained under the IGRA against the Governor in his official capacity under the *Ex parte Young* doctrine.

In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the United States Supreme Court held that a Federal District Court could enjoin the Minnesota Attorney General's enforcement of an unconstitutional railroad rate-setting statute which criminalized violations and called for punishment through fines and imprisonment. As the Supreme Court stated:

[I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

209 U.S. at 155–56, 28 S.Ct. at 452. The theory behind the Court's decision was that a state officer attempting to enforce an unconstitutional statute does not actually

act on behalf of the state. As the Court explained:

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

209 U.S. at 159–60, 28 S.Ct. at 454.

■ Young's progeny have interpreted the case to mean that a suit against a state officer seeking prospectively to enjoin his compliance with federal law is deemed not to be a suit against the state and therefore not prohibited by the Eleventh Amendment.[1] However, it is not true that any suit against a state officer seeking prospective equitable relief escapes the Eleventh Amendment bar, and two separate limitations on the doctrine apply to the Court's assertion of jurisdiction over the Governor based on the IGRA in this case. The first is that a suit seeking to compel a state officer to perform a discretionary act may not be maintained. The second is that a suit naming as the defendant a state officer which is in reality a suit against the State is barred by the Eleventh Amendment no less than if it had been brought against the State itself.

## A. DISCRETIONARY vs. MINISTERIAL ACT

■ An important limitation on the Young doctrine announced in Young itself is that a federal court may not "control the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty." Ex parte Young, 209 U.S. at 158, 28 S.Ct. at 453. No case cited by either party to this action or discovered by the Court involves a federal court ordering a state officer to exercise his discretion outside of the Fourteenth Amendment context.[2]

■ For this Court to order the Governor and the Tribe to conclude a Tribal–State compact, as provided by 25 U.S.C. § 2710(d)(7)(B)(iii) (West Supp.1991), would clearly be to order the Governor to exercise discretion. Negotiating with the plaintiffs to institute state policy is by no means ministerial and involves discretion in ways not contemplated by a court order directing a party to refrain from instituting a prose-

---

**1.** See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (Court could issue injunction against state official to prospectively enjoin him from failing to process Aid to the Aged, Blind or Disabled applications within the time limits established by federal regulations, but could not award retroactive benefits which had been wrongfully withheld); Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Court could require state officials to send each member of the plaintiff class an informational notice ancillary to prospective relief already ordered in Edelman); Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) ("Milliken II") (Court could order comprehensive remedial program in desegregation context, the costs to be borne in part by the State); Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (Court could award attorney's fees against a state officer, to be paid from state funds, for his bad faith refusal to comply with its order to remedy constitutional violations at state prison); Cory v. White, 457

U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) (Interpleader action against two states attempting to tax estate was prohibited suit against states themselves where the state officers' actions were not contrary to federal or state law); Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("Pennhurst II") (Young and Edelman inapplicable when the state official is alleged to be violating state rather than federal law); Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (Denying retroactive relief against state for federal school lands grants trust money that has been lost, but allowing relief for an Equal Protection Clause violation with respect to the distribution of school funds).

**2.** See, e.g., Milliken II, supra at n. 1; Brown v. Georgia Dept. of Revenue, 881 F.2d 1018 (11th Cir.1989) (Members of State Personnel Board ordered to hold a termination hearing to afford terminated employee his procedural due process rights).

cution under an unconstitutional statute as in *Young,* to comply with federal time limits in processing AABD applications as in *Edelman,* to mail a notice provided by the court as in *Quern,* or to pay attorney's fees as in *Hutto.* Accordingly, this Court is without jurisdiction to order the Governor to negotiate with the plaintiff Tribe or to conclude a Compact as contemplated by the Indian Gaming Regulation Act.[3]

### B. STATE AS REAL PARTY IN INTEREST

■ Moreover, this Court believes that this suit against the Governor is in reality a suit against the State of Alabama. Simply seeking injunctive relief against a state officer does not remove the Eleventh Amendment bar if the State is the real party in interest, for *"Edelman* did not hold [ ] that the Eleventh Amendment never applies unless a judgement for money payable from the state treasury is sought." *Cory v. White,* 457 U.S. at 90, 102 S.Ct. at 2328. As the Supreme Court explained in *Pennhurst II,*

> "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) *(per curiam ).* And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief. See *Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

*Pennhurst II,* 465 U.S. at 101–102, 104 S.Ct. at 908–909 (footnote omitted). Quoting from *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted), the *Pennhurst II* court explained that " 'a suit is against the sovereign if "the judgement sought would expend itself on the public treasury or domain, or interfere with the public adminis-

tration," or if the effect of the judgement would be "to restrain the Government from acting, *or to compel it to act." ' "* *Id.* 465 U.S. at 101 n. 11, 104 S.Ct. at 908. The Tribe's complaint, consonant with the IGRA's directive that "the *State* shall negotiate with the Indian tribe in good faith to enter into [ ] a compact," 25 U.S.C. § 2710(d)(3)(A) (West Supp.1991) (emphasis supplied), seeks to have the Governor negotiate with it to reach a Tribal–State compact on behalf of the State. Thus, a decree ordering the Governor to negotiate would operate against the sovereign rather than against the state officer, for it is the State itself that would be enjoined by the order because the State itself would be the entity entering into any compact the Governor negotiates. If this Court issued an order that the Governor negotiate a compact with the Tribe, it would interfere with the State's public administration and compel the State to act. Such an order this Court has no jurisdiction to issue.

### III. JURISDICTION UNDER § 1983

■ In an eleventh-hour attempt to avoid the Eleventh Amendment bar, the Tribe has amended its Complaint in an effort to state a cause of action under 42 U.S.C. § 1983. The Tribe's Second Amended Complaint alleges:

> The Governor's failure to conclude a compact with the Tribe constitutes a violation of IGRA redressable under 42 U.S.C. § 1983, a violation of the Fourteenth Amendment by depriving the Tribe and its members of property and liberty interest[s] without due process of law, and a violation of the provisions of the Supremacy Clause of the United States Constitution.

[Second Amended Complaint, Doc. # 47, para. 29].

The Tribe's assertion of jurisdiction through its § 1983 cause of action is unavailing to rescue this action from the bar imposed by the Eleventh Amendment. In

---

**3.** Although not strictly relevant to the jurisdictional issue, apparently the Tribe is seeking to require the Governor, not only to *negotiate* with the Tribe with respect to gaming activities such

as casino gambling, but to *compel* the Governor to allow gaming activities on tribal land which are not otherwise permitted in the State of Alabama.

effect, the Tribe is attempting to sue the Governor in his official capacity under § 1983 to secure the State's compliance with the Indian Gaming Regulation Act through him as its agent.

 As the Supreme Court has recently pointed out in another context,

> official capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " ... A suit against a state officer in [his] official capacity therefore should be treated as a suit against the State ... [and] the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.

*Hafer v. Melo*, —— U.S. ——, ——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (citations omitted); *see also Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989) (§ 1983 "[s]uits against [state] officials in their official capacities are effectively suits against the entity that those officials represent.") Because the Governor has available to him the same Eleventh Amendment immunity as the State, the Tribe may sue him in his official capacity under § 1983 only if his state immunity fails in some fashion. Section 1983 itself works no abrogation of Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979), and this Court has already ruled that the IGRA did not abrogate state immunity or involve a state waiver of immunity. Therefore, the only ground left for the Tribe's use in defeating the Eleventh Amendment bar against its § 1983 cause of action is the *Ex Parte Young* doctrine. However, the *Young* exception to the Eleventh Amendment bar fails in the § 1983 context of this case for one of the same reasons that it fails in the IGRA context: This suit against the Governor is in reality a suit against the State of Alabama.[4] For that reason, the existence of a cause of action under 42 U.S.C. § 1983 does not confer on this Court jurisdiction to hear this action.

## IV. CONCLUSION

For the foregoing reasons, the Governor's Motion to Dismiss [Doc. # 24] is GRANTED.

---

**4.** Assuming without deciding that the Tribe is correct in asserting that the Fourteenth Amendment has been violated in this case, there appears to be some difficulty in applying the discretionary *vs.* ministerial act dichotomy to the Tribe's § 1983 claim. However, the Court's decision that the suit against the Governor is in fact one against the State is a separate and independently adequate ground for finding want of jurisdiction under both the IGRA and § 1983.