CABAZON BAND OF MISSION INDIANS, et al., Plaintiffs,

v.

NATIONAL INDIAN GAMING COMMISSION, et al., Defendants.

Civ. A. No. 92–1103 (RCL).

United States District Court, District of Columbia.

June 28, 1993.

Glenn M. Feldman, Phoenix, AZ, for plaintiffs Cabazon Band of Mission Indians and Pueblo of Isleta.

Jerome L. Levine, Erin Kenney, Levine & Associates, Los Angeles, CA, William J. O'Brien, II, Charles B. Molster, III, Keck, Mahin & Cate, Washington, DC, for plaintiff San Manuel Band of Mission Indians.

Ben Bridgers, Haire, Bridgers & Spiro, Sylvia, NC, for plaintiff Eastern Band of Cherokee Indians.

Howard Dickstein, Dickstein & Merin, Sacramento, CA, for plaintiff Rumsey Rancheria.

Scott Crowell, Seattle, WA, for plaintiff Spokane Tribe.

Richard Dorman, McRight, Jackson, Dorman, Myrick & Moore, Mobile, AL, for plaintiff Poarch Band of Creek Indians.

Jerry C. Straus, Hans Walker, Hobbs, Straus, Dean & Wilder, Washington, DC, for Delaware Tribe of Oklahoma.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Before the court are rules promulgated by the National Indian Gaming Commission under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq;* all parties have moved for summary judgment. Upon consideration of the memoranda filed by all plaintiffs, by defendants, and by intervenor-defendants, and for the reasons stated below, the court finds that plaintiffs' objections to the rules are meritless. Thus, plaintiffs' motions for summary judgment shall be denied. Defendants' and intervenor-defendants' motions for summary judgment shall be granted, and final judgment shall be entered for defendants and intervenor-defendants. The State of Alabama's motion to dismiss the counterclaim filed by the Poarch Band of Creek Indians is also granted and this counterclaim is dismissed with prejudice.

## I. *INTRODUCTION.*

Following the Supreme Court's decision in *State of California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (authorizing gaming in Indian country), Congress enacted the Indian Gaming Regulatory Act ("IGRA"), codified at 25 U.S.C. §§ 2701 *et seq.* The Act, *inter alia,* codified the right of Indian tribes to conduct limited gaming on Indian lands; established the National Indian Gaming Commission ("the Commission") to implement and oversee the Act; and divided the various types of gaming into three "classes," each of which is subject to differing levels of state and federal regulation and involvement.

At issue in this case are rules relating to two of those three classes.[1] Class II gaming, the definition of which includes bingo and games comparable to it as well as non-banking card games, is subject to the provisions of IGRA and to state law, but remains within the jurisdiction of the Indian tribes. All games which do not qualify for class I or class II (examples include banking card games such as baccarat and casino games such as roulette) fall into the residuary category of class III gaming; such games are lawful only if the Indian tribe and the relevant State enter into a Tribal–State compact allowing such gaming. Although the Act anticipates that the States will negotiate such compacts in good faith, 25 U.S.C. § 2710(d)(3)(A), several Indian tribes assert that they have had difficulty reaching agreements with the States. Since only class III gaming requires such a compact, it is imperative for the Indian tribes that the definition of class II gaming be as expansive as possible.

Important in the distinction between class II gaming and class III gaming are the definitions of (as well as the allowable uses of) "electronic, computer or other technologic aids," 25 U.S.C. § 2703(7)(A)(i) and 25 C.F.R. § 502.7, and "electronic or electromechanical facsimiles," 25 U.S.C. § 2703(7)(B)(ii) and 25 C.F.R. § 502.8. The former may be used with respect to bingo, a class II game; the latter are relegated to class III. Thus, it is again imperative for the Indians that the definition of aids be as broad as possible.

The Commission promulgated Definitions under IGRA in its Proposed Rule and Public Hearings, dated November 1, 1991. 56 Fed. Reg. 56278. After five public hearings, the Commission released on April 9, 1992, its final Rule and Definitions. 57 Fed.Reg. 12382, codified at 25 C.F.R. § 502.1 *et seq.* In Claims One, Two, and Three of their four-count complaint, plaintiffs challenge several of the subsections of the Commission's final rule as arbitrary and capricious, beyond statutory authority, and contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* In their final claim, plaintiffs request a declaratory judgment that video and computer assisted pull-tab games[2] qualify as class II games.

Plaintiffs are eight Indian tribes[3] that conduct gaming on Indian lands by using video and computer assisted pull-tab games which, plaintiffs assert, Congress meant to be within the class II definition but which the Commission allegedly has redefined illegally as class III games. Defendants are the Commission, its chairman, the Department of the Interior (and its secretary), and the Department of Justice (and the Attorney General). In addi-

---

1. Class I gaming is limited largely to social games for minimal prizes and is not subject to any state or federal oversight or regulation. 25 U.S.C. § 2703(6). Class I gaming is not relevant to these proceedings.

2. In traditional paper pull-tab games, players purchase outwardly-identical cards from a stack of cards (the "deal"); the deal includes a predetermined number of winning and losing cards. The player opens the tab and finds out if the card is a winner. The computer version, by plaintiffs' admission, is identical in all respects to the paper version except that the computer selects a "card" from a randomly created "deck" and pulls the "tab" for the player, displaying the result on the video screen. (The terms in the preceding sentence are in quotations as the card, deck, and tab are not physically extant, but rather are computer-generated.) Just as with paper pull-tab games, the computer version has a fixed number of winning cards in its "deal." Plaintiffs assert that each gambler competes against other gamblers in both space and time since (1) five video screens are linked to the same computer deal, thus allowing for five individuals to play simultaneously; and (2) the computer continues to draw from the same deal over time until a set number of cards have been purchased by gamblers playing the computer, at which point the computer creates a new random deal.

Plaintiffs readily acknowledge that—save the medium—all aspects of the paper version of pull-tabs are replicated in the video version.

3. Seven tribes initiated the lawsuit. They are the Cabazon Band of Mission Indians, the Eastern Band of Cherokee Indians, the Poarch Band of Creek Indians, the Pueblo of Isleta, Rumsey Rancheria, the San Manuel Band of Mission Indians, and the Spokane Tribe. An eighth plaintiff, the Delaware Tribe of Western Oklahoma, joined the lawsuit on February 3, 1993, and agreed to be bound by all decisions of this court. Plaintiffs have filed two sets of summary judgment motions, one filed by the Poarch Band of Creek Indians; the second filed on behalf of the other plaintiffs.

tion, fifteen states[4] have intervened in the case as defendants. Both defendants and intervenor-defendants have filed cross-motions for summary judgment.[5]

Finally, the Poarch band has also filed a counterclaim against intervenor-defendant State of Alabama. Alabama has filed a motion to dismiss the counterclaim.

## II. *ADMINISTRATIVE PROCEDURE ACT CHALLENGES.*[6]

In the first three claims in their four-count complaint, plaintiffs challenge several aspects of the Commission's final rule as arbitrary and capricious, beyond statutory authority, and contrary to law under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* The court finds that the legislative rules promulgated by the Commission are perfectly consistent with Congress' unambiguous intent as embodied in IGRA. Therefore, defendants' and intervenor-defendants' motions for summary judgment as to these three claims will be granted; plaintiffs' motions for summary judgment as to these three claims will be denied.

■ Under the APA, a court reviewing an agency's legislative rule-making must first examine the statute and determine whether Congress has unambiguously expressed its intent. *Chevron, U.S.A. v. National Resources Defense Council,* 467 U.S. 837, 842–

43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If Congress has been unambiguous, neither the agency nor the court may diverge from that intent. Such is the case here.

### A. *25 C.F.R. § 502.3.*

■ First, plaintiffs challenge 25 C.F.R. § 502.3, the definition of "class II gaming."[7] Plaintiffs challenge the Commission's determination that the parenthetical "(whether or not electronic, computer, or other technologic aids are used)" should not be included in the description of the sub-games of pull-tabs, punch boards, tip jars, instant bingo, and other games similar to bingo in 25 C.F.R. § 502.3(b). Plaintiffs assert that the Commission's failure to include the parenthetical in subsection (b) means that the use of such aids is prohibited with respect to those sub-games. The court finds otherwise.

In its initial rule, the Commission divided the two categories of class II gaming enunciated in 25 U.S.C. § 2703(7)(A) (bingo [including the sub-games of pull-tabs, lotto, and the like] and non-banking card games) into three categories (bingo, the sub-games, and non-banking card games). As to the first two categories, the Commission included the parenthetical "(whether or not electronic, computer, or other technologic aids are used)," thus mirroring the construction of 25 U.S.C. § 2703(7)(A)(i).[8] In the final rule, however,

---

**4.** Alabama, Arizona, California, Colorado, Connecticut, Florida, Idaho, Kansas, Michigan, Mississippi, Nebraska, North Dakota, South Dakota, Wisconsin, and Wyoming.

**5.** This case is ideally suited for disposition by summary judgment. As all parties acknowledge, there are few—if any—issues of fact, and certainly no genuine issues of material fact which could preclude entering judgment for any party. Fed. R.Civ.P. 56(c). *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the issues are limited to disputes of law.

**6.** Defendants have not challenged plaintiffs' right to bring this suit. Nonetheless, it is the responsibility of the court to determine that it has jurisdiction to hear this challenge. The court finds that jurisdiction in this court is proper for both the APA challenges as well as the declaratory judgment action under 28 U.S.C. § 1331 as well as 5 U.S.C. § 702. Plaintiffs have demonstrated that there is a ripe, justiciable controversy in that plaintiffs face prosecution for violations of feder-

al law if they continue to use the video pull-tab games at issue here. Similarly, venue is proper in this court pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

**7.** *Class II gaming* means:
 (a) Bingo or lotto (whether or not electronic, computer, or other technologic aids are used)
 . . .
 (b) If played in the same location as bingo or lotto, pull-tabs, punch boards, tip jars, instant bingo, and other games similar to bingo;

 25 C.F.R. § 502.3.

**8.** The term 'class II gaming' means—
 (A) the game of chance commonly known as bingo (whether or not electronic, computer, or other technologic aids are used in connection therewith)—

 including (if played in the same location) pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo. . . .

the Commission stated that the parenthetical only modifies preceding language and thus removed the parenthetical from the § 502.-3(b).

However, the Commission did not—and the rules do not—prohibit the use of such aids with respect to the sub-games. In fact, in its commentary to the final rule, the Commission noted "that in its view so long as technology does not fall under the definition of gambling devices under the Johnson Act (15 U.S.C. 1171), it is not prohibited." 57 Fed.Reg. at 12383. In other words, under the Commission's rules, technologic aids *may be used* with the sub-games.[9]

In short, contrary to plaintiffs' assertions, the court finds that the use of aids is not prohibited by 25 C.F.R. § 502.3(b); rather, the Commission has specifically stated that the use of such technology is permitted with the sub-games, just as it is with bingo. Therefore, plaintiffs' objections are rejected as moot.

### B. *25 C.F.R. § 502.4.*

█ Plaintiffs also challenge 25 C.F.R. § 502.4, the definition of "class III gaming."[10] Since Congress defined "class III gaming" negatively,[11] plaintiffs assert that it was unlawful for the Commission to promulgate an affirmative definition. This objection is frivolous. In its definition, the Commission included non-exclusive examples of class

25 U.S.C.A. § 2703(7).

**9.** The intervenor-defendants also readily admit this fact in their memoranda.

**10.** *Class III gaming* means all forms of gaming that are not class I gaming or class II gaming, including but not limited to:
(a) Any house banking game, including but not limited to—
(1) Card games such as baccarat, chemin de fer, blackjack (21), and pai gow (if played as house banking games);
(2) Casino games such as roulette, craps, and keno;
(b) Any slot machines as defined in 15 U.S.C. 1171(a)(1) and electronic or electromechanical facsimiles of any game of chance;
(c) Any sports betting and parimutuel waging including but not limited to wagering on horse racing, dog racing, or jai alai; or

III gaming, all of which were either listed specifically in the statute (subsections (a)(1) and (b) of the Commission's definition) or enumerated in the accompanying Senate Report (subsections (a)(2), (c), and (d)). Moreover, and most importantly, the definition retains—verbatim—the statutory definition in its opening clause. Merely providing clarifying examples explicitly derived from the statute or its legislative history can hardly be termed contrary to law. All challenges to § 502.4 therefore are meritless and are denied.

### C. *25 C.F.R. § 502.7.*

█ Similarly, plaintiffs challenge 25 C.F.R. § 502.7, the definition of "electronic, computer, or other technologic aid."[12] The court finds that the Commission's definition exactly tracks the language of the Senate Report. *See* S.Rep. No. 446, 100th Cong., 2d Sess. 9 (1988), *reprinted in* 1988 U.S.Code Cong. & Ad.News 3071, 3079. Where Congress' intent is clear and the agency's actions implement that unambiguous intent, a reviewing court has no power (nor any desire, for that matter) to overturn such lawful activity. All challenges to § 502.7 therefore are meritless as well.

### D. *25 C.F.R. § 502.8.*

█ Finally, plaintiffs also challenge 25 C.F.R. § 502.8, the definition of "electronic

(d) Lotteries.
25 C.F.R. § 502.4.

**11.** "The term 'class III gaming' means all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8).

**12.** *Electronic, computer or other technologic aid* means a device such as a computer, telephone, cable, television, satellite or bingo blower and that when used—

(a) Is not a game of chance but merely assists a player or the playing of a game;
(b) Is readily distinguishable from the playing of a game of chance on an electronic or electromechanical facsimile; and
(c) Is operated according to applicable Federal communications law.
25 C.F.R. § 502.7.

or electromechanical facsimile."[13] The adopted definition of "gambling device" is taken from the Johnson Act,[14] 15 U.S.C. § 1171 *et seq.* This definition is the only definition possible in order to implement Congress' explicit intent, as expressed in IGRA.

In 25 U.S.C. § 2710(d)(6), Congress repealed the applicability of the Johnson Act for class III devices subject to an extant, effective Tribal–State compact. There is no other repeal of the Johnson Act, either expressed or by implication,[15] in IGRA. In fact, in 25 U.S.C. § 2710(b)(1)(A), Congress specifically states that class II gaming is subject to Federal law and the Senate Report states that the applicable "Federal law" is the Johnson Act, 15 U.S.C. § 1175. S.Rep. No. 446 at 12, 1988 U.S.Code Cong. & Ad. News 3082. Therefore, save the explicit, limited repeal in 25 U.S.C. § 2710(d)(6), the Johnson Act remains fully operative; it was not repealed by IGRA.

Regarding the use of technology, the distinction between class II and class III, according to IGRA, is that the use of "aids" is permitted for certain class II games; the use of "facsimiles" is permitted only in class III games and only when the Indians have entered into a Tribal–State compact. When this distinction is combined with the limited repeal of the Johnson Act, it is plainly evident that IGRA's "facsimiles" are the Johnson Act's "gambling devices." On the one hand, given the statutory definition of gambling devices in the Johnson Act and the common sense definition of facsimile, it is impossible for the definition of facsimile to be broader than that of gambling device; every facsimile of a game of chance is necessarily a Johnson Act gambling device. On the other hand, if the definition of facsimiles were less broad than that of gambling devices, IGRA would be internally contradictory: technology that—ostensibly—now would be allowed for class II gaming under 25 U.S.C. § 2703(7)(A) would be prohibited by the Johnson Act (since the repeal of the Johnson Act is only for class III gaming). Thus, only a definition of facsimile that is equivalent to that of gaming device renders the statute internally consistent and allows both statutes peaceably to coexist.

Plaintiffs' main objection to the Commission's definition stems from their perception that the definition of gambling device sweeps within its ambit *any* device that might be used in gambling. This interpretation of the Johnson Act is incorrect. As several cases have held,[16] Congress has acknowledged,[17] and the Commission has noted in the preamble to its rules, the Johnson Act applies only to slot machines and similar devices (including the pull-tab games here in issue), not to aids to gambling (such as bingo blowers and the like). When the scope of the Johnson Act is properly determined, it is clear that the definition of gambling devices is significantly less broad than plaintiffs fear. More-

---

**13.** *Electronic or electromechanical facsimile* means any gambling device as defined in 15 U.S.C. 1171(a)(2) or (3).

25 C.F.R. § 502.8.

**14.** The Johnson Act not only defines gambling devices, 15 U.S.C. § 1171(a), but also makes possession of any such device illegal in Indian country, 15 U.S.C. § 1175.

**15.** Without an irreconcilable conflict between the new statute and an earlier statute from which a repeal by implication may be inferred, or clear and manifest intent to repeal an earlier statute, repeals by implication are not favored. *Rodriguez v. United States,* 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). There is no conflict between the Johnson Act and IGRA here, much less an irreconcilable conflict; nor is there a clear and manifest intent to repeal the Johnson Act. Thus, the court finds that there is no repeal

by implication. *See United States v. Burns,* 725 F.Supp. 116, 124 (N.D.N.Y.1989), *aff'd sub nom, United States v. Cook,* 922 F.2d 1026 (2d Cir. 1991).

**16.** *See, e.g., Lion Manufacturing v. Kennedy,* 330 F.2d 833, 836–37 (D.C.Cir.1964) ("[15 U.S.C. § 1171] reflects a purpose by the Congress to address itself only to those machines which, although differing from the slot machine in physical design, are calculated to function quite as effectively in separating the public from its money on a large scale."); *United States v. 137 Draw Poker-type Machines,* 606 F.Supp. 747 (N.D.Ohio 1984), *aff'd,* 765 F.2d 147 (6th Cir.1985).

**17.** "[15 U.S.C. § 1175] prohibits gambling devices on Indian lands but does not apply to devices used in connection with bingo or lotto." S.Rep. No. 446 at 12, 1988 U.S.Code Cong. & Ad.News 3082.

over, it is clear that Congress' intent in IGRA is fulfilled only when IGRA's definition of facsimile adopts the Johnson Act's definition of gambling devices.

### E. Conclusion.

Therefore, plaintiffs' challenges under the Administrative Procedure Act are either moot or meritless. Plaintiffs' motions for summary judgment as to Claim One, Two, and Three of their complaint are denied. Defendants' and intervenor-defendants' motions for summary judgment as to Claim One, Two, and Three are granted.

### III. DECLARATORY JUDGMENT.

■ More important to plaintiffs than the APA challenges, however, is their declaratory judgment claim. The fourth and final count in plaintiffs' complaint requests that the court enter a declaratory judgment determining whether the video pull-tab games at issue here fall within the scope of class II or fall into the residuary category, class III. Regardless of the court's findings in Part II., above, the court's holding as to the declaratory judgment effectively settles the issue.

The court finds that the decision regarding the declaratory judgment is a simple one that may be accomplished solely by examining the statute itself (that is, without looking to the Commission's rules). Without any doubt, the video pull-tab games clearly are facsimiles of games of chance and therefore are class III gaming. Thus, defendants' and intervenor-defendants' motions for summary judgment as to this claim will be granted and plaintiffs' motions for summary judgment as to this claim will be denied.

IGRA defines class II gaming both affirmatively and negatively. Affirmatively, class II includes the game of chance known as bingo, several sub-games, and certain authorized (or, at least, not prohibited) non-banking card games. 25 U.S.C. § 2703(7)(A). Negatively, class II does not include, among other things, "electronic or electromechanical facsimiles of any game of chance or slot machines of any kind." 25 U.S.C. § 2703(7)(B)(ii).

■ Of course, one of the cardinal rules of statutory interpretation is that the court must give effect to Congress' explicit language and to each word and provision of the statute. *Michigan Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285, 1293 (D.C.Cir.), *aff'd*, 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989). The definition of facsimile is "an exact and detailed copy of something." Webster's Third New International Dictionary 813 (1965). Plaintiffs acknowledge (and even take comfort in the fact) that the video pull-tabs exactly replicate the paper version of the game and preserve all the fundamental characteristics of the paper version. In other words, the game is an electronic facsimile of the paper game of chance known as pull-tabs. *See Sycuan Band of Mission Indians v. Roache*, 788 F.Supp. 1498 (S.D.Cal.1992).

Plaintiffs readily admit that the video pull-tab game exactly replicates the paper pull-tab game. Thus, if the court were to find that the electronic version of pull-tabs were not an electronic facsimile of the paper game, the statutory provision in 25 U.S.C. § 2703(7)(B)(ii) would be rendered absolutely meaningless. If the video pull-tab game is not an electronic facsimile, the court cannot imagine what would qualify as one. In order to give meaning to the statute, therefore, the court must recognize that what amounts to a tautology indeed is true: a facsimile is a facsimile is a facsimile.[18]

All of plaintiffs' objections to this finding are meritless. First, plaintiffs assert that the court must interpret any ambiguity in favor of the Indians. *See Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112–13, 48 L.Ed.2d 710 (1976); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 59 (D.C.Cir.1991). Where, as here, the statute is painfully explicit, however, there is no ambiguity to interpret. Therefore, this principle of statutory interpretation has no place.

Second, plaintiffs allege that the legislative history of IGRA suggests that Congress intended that the Indians be able to make use of appropriate technology: "The Committee intends that tribes be given the opportunity

---

**18.** Paraphrased with apologies to Gertrude Stein.

to take advantage of modern methods of conducting class II games and the language regarding technology is designed to provide maximum flexibility." *See* S.Rep. No. 446 at 9, 1988 U.S.Code Cong. & Ad.News 3079.

■ This argument fails for several reasons. First, this court need not resort to legislative history when the statute is as clear and explicit as IGRA. However, the legislative history actually supports the obvious reading of the statute delineated above. The Senate Report quoted above continues with a description of the type of technology Congress meant when it suggested "maximum flexibility": *communications* technology that might be used to link bingo players in several remote locations. "In other words, such technology would merely broaden the potential participation levels and *is readily distinguishable from the use of electronic facsimiles* in which a single participant plays a game with or against a machine rather than with or against other players." *Id.* Video pull-tab games are just such facsimiles, and explicitly are not part of the technology Congress intended to be class II aids. *See Spokane Indian Tribe v. United States,* 972 F.2d 1090, 1093 (9th Cir.1992), *affirming, Spokane Tribe of Indians v. United States,* 782 F.Supp. 520, 524 (E.D.Wash.1991).

Plaintiffs also argue that no electronic game can be a facsimile of a paper game; in their view, an electronic game can only be a facsimile of another electronic game. Congress, however, clearly was not so simple-minded when it enacted IGRA, and there is no doubt that Congress intended that electronic facsimiles of paper games of chance be class III games.

Finally, plaintiffs rely once again on the Senate Report and assert that since five video games are networked with one computer, each gambler plays against other gamblers (both in space and time) and thus does not "play[ ] a game . . . against a machine." Plaintiffs' narrow reading of the statute obviously circumvents Congress' clear and unambiguous intent as expressed in IGRA and its legislative history: that electronic facsimiles of games of chance—like video pull-tabs—are

class III games. *See Spokane Indian Tribe,* 972 F.2d at 1093.

In short, Congress' intent, as expressed in the statute and the legislative history, is clear and unambiguous, and the court—without difficulty—finds that the video pull-tabs game using computerized opportunities in a finite group, or "deal," of such opportunities comprised of a pre-determined mix of winning and losing opportunities which, when such opportunities are purchased by the player, are displayed and its symbols revealed on a video screen, is a class III "electronic facsimile" under 25 U.S.C. § 2703(7)(B)(ii). In fact, the video pull-tabs game is exactly the sort of electronic facsimiles that Congress specifically excluded from class II gaming. Therefore, defendants' and intervenor-defendants' motions for summary judgment as to Claim IV of plaintiffs' complaint is granted; plaintiffs' motions for summary judgment as to the same count is denied.

### IV. *STATE OF ALABAMA'S MOTION TO DISMISS.*

■ After intervenor-defendants were granted leave to intervene, plaintiff Poarch Band of Creek Indians filed a counterclaim against the State of Alabama for declaratory and injunctive relief. The State moved this court to dismiss the counterclaim. The State's motion to dismiss is granted.

The issues raised in Poarch's counterclaim—that Alabama has failed to negotiate a Tribal–State compact in good faith—have already been raised in another lawsuit, *Poarch Band of Creek Indians v. Alabama.* That case, brought in the Southern District of Alabama, was dismissed for lack of jurisdiction since, the court found, Alabama had not waived its Eleventh Amendment immunity. 784 F.Supp. 1549 (S.D.Ala.1992).[19]

Unless the facts which led the Alabama district court to find that there was no jurisdiction have changed since that court dismissed Poarch's claim, the doctrine of *res judicata* will necessarily leave this court without jurisdiction as well. This court is

---

**19.** *See also* 776 F.Supp. 550 (S.D.Ala.1991) (same decision on earlier motion to dismiss).

Both decisions are currently on appeal to the Eleventh Circuit Court of Appeals (No. 92–6244).

bound by precedents in this circuit which include *Dozier v. Ford Motor Co.,* 702 F.2d 1189 (D.C.Cir.1983), in which the Court of Appeals held that the doctrine of *res judicata* applies to a dismissal for lack of jurisdiction unless a "curable defect" has been remedied in the interim. The curable defect in this case, Alabama's Eleventh Amendment immunity, remains intact today.

The court's finding that Alabama has not waived its Eleventh Amendment immunity is based on several points. *First,* Alabama's entry into this lawsuit was for two extremely limited purposes: first, the litigation of whether the Commission violated the APA; and second, the determination of a declaratory judgment regarding the proper status of video pull-tab games. The States, in their motion to intervene, specifically limited their entry to these issues and expressly did not waive their immunity as to other issues, including suits brought under 25 U.S.C. § 2710(d)(7)(A) (the statute under which Indian tribes may bring suit for a State's failure to negotiate in good faith). Therefore, the State of Alabama did not expressly waive its Eleventh Amendment immunity, but rather expressly maintained it.

*Second,* the State did not implicitly waive its immunity either. Typically, for a court to find an implicit waiver of Eleventh Amendment immunity, the court must make two findings: first, that the counterclaim arises from the same event; and second, that the counterclaim is defensive, typically in the nature of recoupment. *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 502 (N.D.Ill.1985). As for the second prong of this test, the counterclaim should not be "for the purpose of obtaining an affirmative judgment against the State." *Ibid.* (citation omitted).

Here, the Poarch counterclaim fits neither of these categories. As to the first category, although it is true that the subject of both lawsuits is related (in that both involve IGRA), the similarities end there. The underlying suit here is one involving the APA and asking the court for an interpretation of 25 U.S.C. §§ 2703(7) and 2703(8). The Poarch counterclaim, on the other hand, is a suit premised on 25 U.S.C. § 2710(d)(7)(A)

and seeks declaratory and injunctive relief against the State of Alabama based on the State's alleged failure to negotiate in good faith. None of the issues necessary for determination of the counterclaim have arisen in the underlying action; nor do the cases arise from the same event. The only connection between the two suits is that both involve IGRA (although different sections thereof).

Poarch similarly fails the second part of the test. Rather than seeking defensive relief, Poarch here seeks an affirmative judgment against the State of Alabama. In *Woelffer,* also an injunction case, the court found that an injunction of the type plaintiffs seek could not be termed defensive. The court reaches the same result here. Poarch seeks to go significantly beyond the bounds of the present suit and obtain an affirmative judgment that the State of Alabama has failed to negotiate in good faith as well as an injunction that would force a Tribal–State compact. Such a judgment cannot be termed defensive. Thus, the court finds that the State of Alabama did not implicitly waive its Eleventh Amendment immunity.

*Third,* it is not at all clear that the State of Alabama's counsel would even have had the power to waive the State's Eleventh Amendment immunity. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Keenan v. Washington Metropolitan Area Transit Authority,* 643 F.Supp. 324 (D.D.C.1986). Under Alabama's Constitution, Article 1, § 14, officials in Alabama have no authority to waive the State's immunity.

As a result of each of these facts, the court finds that the State of Alabama did not waive its Eleventh Amendment immunity. The *Dozier* "curable defect" has not been cured, therefore, and the doctrine of *res judicata* applies. The State of Alabama's motion to dismiss the Poarch counterclaim is granted; the counterclaim filed by plaintiff Poarch Band of Creek Indians is dismissed with prejudice.

## V. *CONCLUSION.*

Plaintiffs' briefs are filled with information regarding the importance of video pull-tabs

to tribal economies and the potential security benefits of computerized versions of the game. Concerns of this sort, however, do not assist a court examining an unambiguous statute like IGRA. Here, Congress has clearly expressed its intent that electronic facsimiles of games of chance—like video pull-tab games—not be within the jurisdiction of the Indian tribes (class II gaming), but rather be subject to Tribal–State compacts (class III gaming). Despite plaintiffs' numerous attempts to alter this conclusion, it is inescapable. Therefore, plaintiffs' motions for summary judgment must be and are denied, and defendants' and defendant-intervenors' motions for summary judgment must be and are granted. Finally, the State of Alabama's motion to dismiss the Poarch counterclaim is granted; the counterclaim filed by plaintiff Poarch Band of Creek Indians is dismissed with prejudice.[20]

### ORDER AND FINAL JUDGMENT

This case comes before the court on motions for summary judgment filed by plaintiffs (two motions were filed on behalf of plaintiffs), defendants, and intervenor-defendants. Also before the court is the State of Alabama's motion to dismiss the counterclaim filed by the Poarch Band of Creek Indians. Upon consideration of these motions, the memoranda in support of them, and the oppositions and replies filed by the parties, and for the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that:

1. Plaintiffs' motions for summary judgment are DENIED.

2. Defendants' motion and intervenor-defendants' motion for summary judgment are GRANTED, and FINAL JUDGMENT is

hereby entered for defendants and intervenor-defendants.

3. The motion to dismiss filed by the State of Alabama is GRANTED. The counterclaim filed by plaintiff Poarch Band of Creek Indians is DISMISSED WITH PREJUDICE.

4. This case is DISMISSED WITH PREJUDICE.

5. Plaintiffs' motion for postponement of hearing is DENIED AS MOOT.

SO ORDERED.

---

**20.** Plaintiffs requested oral argument on their pending motions, and the court had scheduled argument for 10:00 a.m. on July 2, 1993. However, plaintiffs then moved for a continuance of that hearing as Senators Daniel Inouye and John McCain, Chairman and Vice Chairman of the Senate Indian Affairs Committee, have scheduled a hearing on Indian gaming for that date. Rather than postponing the oral argument on this issue, the court believes it expedient to render its decision on this statute prior to the Senate's

hearing. If plaintiffs ultimately are to receive relief, that relief is going to come not from a court impermissibly redefining words of a statute so as to reach a desired end, but from Congress, the institution with the power properly to delimit the scope of the Indians' right to conduct gaming. The court sincerely hopes that this decision will assist Congress in its formulation of amendments to IGRA.

Plaintiffs' motion for a continuance of the oral argument therefore is denied as moot.