Robert **RIGBY**, Petitioner,

v.

Lorraine **DAMANT**, Respondent.

**Civil Action No. 07–10179–JLT.**

United States District Court,
D. Massachusetts.

May 15, 2007.

---

See also 2007 WL 1413222.

Courtney M. Baigrie, Kevin M. Colmey, Barry S. Pollack, Joshua L. Solomon, Sullivan & Worcester LLP, Boston, MA, for Petitioner.

Beth I.Z. Boland, Jennifer W. Corinis, Francesca L. Miceli, Bingham McCutchen LLP, Boston, MA, for Respondent.

## MEMORANDUM

TAURO, District Judge.

This action for the return of a child is brought under the Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") [1] and the International Child Abduction Remedies Act ("ICARA").[2]

### Background

It is undisputed that Petitioner Robert Rigby and Respondent Lorraine Damant

---

1. Hague Convention on the Civil Aspects of International Child Abduction, art. 16, Nov. 19, 1980, 19 I.L.M. 1501 [hereinafter Hague Convention].

2. 42 U.S.C. § 11601–11.

are the parents of Robert Damant ("the Child"), born August 11, 2000. The Child was born in Canada and had resided with the couple until October 23, 2004. Petitioner alleges that he possessed joint custodial rights over the Child by operation of Canadian law. Petitioner alleges that Respondent abducted the Child without notice to or authorization from the Petitioner. Petitioner asks this court to order the Child returned to Canada.

Respondent argues in reply that Petitioner abandoned Respondent and the Child, and that her departure from Canada with the Child was, therefore, not an abduction in violation of any custody rights exercised by Petitioner. Respondent also argues that returning the Child would expose him to a grave risk of physical or psychological harm.

Following the removal, Petitioner applied to the Family Court of the Superior Court of Justice in Hamilton, Ontario, which ruled on May 11, 2005, that Petitioner would have sole custody of the Child. This document authorizes Canadian law enforcement to "locate, apprehend, and deliver the child to Robert Rigby." [3] Petitioner has filed a Request for Return with the U.S. State Department and the National Center for Missing and Exploited Children.

### Procedural Posture

Petitioner filed his petition on January 31, 2007. The court issued an ex parte temporary restraining order the next day, requiring Respondent to promptly appear. After a hearing with both sides present on February 7, 2007, this court issued an order to maintain the status quo. That order prevented either party from removing the Child from this jurisdiction and required Respondent to receive court approval before leaving Massachusetts or changing her residence. The court directed the parties to propose a joint discovery plan in anticipation of a May 14, 2007 bench trial. On March 9, 2007, the Parties filed such a statement proposing a discovery deadline of April 23, 2007 for fact depositions and May 11, 2007, for expert depositions. The Parties requested a two week delay of the bench trial which was then rescheduled for June 18, 2007.

On March 23, 2007, Petitioner filed a *Motion for Summary Judgment,* arguing that discovery was unnecessary and that the Child should be immediately returned. This court denied that motion on April 27, 2007,[4] having found genuine disputes of material fact as to whether Petitioner was actually exercising custody at the time of the Removal,[5] and as to whether returning the Child to Canada would expose him to a grave risk of physical or psychological harm.[6]

On April 6, 2007, Respondent asked for another extension in the trial date, citing her pregnancy. This court allowed that extension over Petitioner's objections, scheduling a trial for July 18, 2007, and noting that no further extensions would be granted.

On April 24, 2007, Respondent initiated an action in the Barnstable Division of the Probate and Family Court Department of the Commonwealth of Massachusetts ("the

---

**3.** Order of Family Court of Hamilton, Ont., Emergency Verified Pet. for Warrant of Arrest in Lieu of Writ of Habeas Corpus and Pet. for Return of a Child against Lorraine Damant, Paper # 1, Ex. C.

**4.** Order, Paper # 30. *See also* Mem., Paper # 38 (May 7, 2007).

**5.** *See* 42 U.S.C. § 11603(e)(2)(B); Hague Convention, art. 13(a).

**6.** *See* 42 U.S.C. § 11603(e)(2)(A); Hague Convention, art. 13(b).

Barnstable court"), seeking a ruling that she is entitled to custody of the Child under Massachusetts law.[7] On May 1, 2007, Petitioner filed an *Emergency Motion for Preliminary Injunction,* requesting that this court enjoin a custody hearing scheduled in the Barnstable court set for May 14, 2007. On the same day, Petitioner appealed the denial of his *Motion for Summary Judgment* to the First Circuit Court of Appeals. That appeal is currently pending.

Having been advised that Respondent would reschedule her state court date, the court ordered the Parties to appear on May 14, 2007, to address the pending motion for an injunction and the question of this court's jurisdiction in light of the pending appeal. On May 11, 2007, Respondent filed a *Motion to Clarify Scheduling Order* arguing that discovery should be ongoing during the appeal and that the fact discovery deadline should be extended until May 31, 2007, without changing the trial date. The court now addresses these issues.

### Discussion

*Jurisdiction*

 With some exceptions, the filing of a Notice of Appeal "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."[8] Appeal from an interlocutory order does not divest this court of jurisdiction to proceed with matters unrelated to the appeal.[9]

As an initial matter, the court and the parties agreed at oral argument that there is jurisdiction to address the question of whether an injunction should issue to block the Barnstable court proceeding. Such a question is not related to the pending appeal which deals with the issue of whether or not this court erred in determining that discovery and an evidentiary hearing were warranted in this Hague Convention case.

 Petitioner does argue, however, that the court no longer has jurisdiction to oversee discovery. This argument is not persuasive. Essentially, Petitioner's appeal asserts that he was entitled to summary return of the child on the record as it stood at the time of his summary judgment motion. Petitioner argues that the only relevant facts are that he is the father who has custody rights under Canadian law, and that Respondent removed the Child from Canada. Should the First Circuit decide to hear his appeal, it would simply be considering the legal question of the propriety of discovery as opposed to summary return on the facts already in the record. In this way, discovery into other factual areas would not disrupt the appeal.

Having found jurisdiction to proceed, the court notes that this course is also an efficient use of judicial resources. Should discovery go forward, but the Petitioner prevail on appeal, he would be entitled to immediate return. And so, the continued litigation in this court would only have harmed him in the cost of time and money invested in the discovery. But, should the court stay discovery and the Respondent

---

7. Respondent's counsel have represented to this court in briefing and oral argument that Respondent seeks only temporary custody from the Barnstable Court, but her actual Complaint in the Barnstable Court action does not so limit the requested relief. *See* Complaint under MGL 209(B), Aff. in Supp. of Emergency Mot. for Prelim. Inj., Paper # 33, Ex. A.

8. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam).

9. *Sycuan Band of Mission Indians v. Roache,* 788 F.Supp. 1498, 1511 (S.D.Cal.1992) (collecting cases examining this proposition).

prevail on appeal, any discovery would have to recommence at a later date. The delay in that discovery could very well necessitate further delays in the ultimate resolution of the case, something the Petitioner has vehemently expressed his wish to avoid. Weighing the risk of the unnecessary cost of a few depositions against the risk of further delay in trial, it is clear that judicial efficiency is best served by continuing to exercise jurisdiction and maintaining the July 18, 2007, trial date.

This ruling is made without prejudice to Parties re-raising the question of jurisdiction should the case proceed to trial while an appeal is pending.

*Petitioner's Emergency Motion for Preliminary Injunction*

Respondent has initiated proceedings in the Barnstable court. Respondent has asked that court to "exercise its jurisdiction over the minor child to award custody to his mother, Lorraine Damant, adopting and modifying the Canadian order if necessary." [10]

Article 16 of the Hague Convention explicitly provides that "the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention." [11] Respondent contends that any determination from the Barnstable court would only address temporary custody and, therefore, would not be a decision on the merits of the rights of custody.

[■] That argument, however, is one that the Barnstable court will have to consider when assessing its own jurisdiction in determining whether it should issue any rulings. The Anti–Injunction Act makes it clear that it would be improper for this court to decide this question for the state court and enjoin state proceedings. Specifically, the Anti–Injunction Act states that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." [12]

The Supreme Court has made clear that these exceptions should be narrowly construed. [13] Although the parties point out several cases involving the Hague Convention and the abstention doctrine, this court has been unable to find any opinions applying the Anti–Injunction Act in a Hague Convention case.

As to the first exception, no Act of Congress expressly authorizes this court to enjoin the Barnstable court's proceedings. As noted above, Article 16 of the Hague Convention does forbid judicial authorities from adjudicating a custody dispute on the merits. The federal legislation that implements the Hague Convention, the International Child Abduction Remedies Act ("ICARA") also declares that "The Convention and this Act empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." [14] These provisions, however, do not specifically authorize an injunction ordering the state court not to proceed. The Barnsta-

---

**10.** Compl. under MGL 209(B), Aff. in Supp. of Emergency Mot. for Prelim. Inj., Paper # 33, Ex. A.

**11.** Hague Convention, art. 16.

**12.** 28 U.S.C. § 2283 (2007).

**13.** *Atl. C.L.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

**14.** 42 U.S.C. § 11601(b)(4).

ble court is just as capable of reading and interpreting these general prohibitions as is this court, and it would be inconsistent with the Anti–Injunction Act for this court to usurp the Barnstable court's role in deciding what matters that court is permitted to adjudicate.

The Supreme Court has been willing to imply authorization under the Anti–Injunction Act absent the express authorization demanded by the statute.[15] In broadening the exception, however, the Court provided that "to qualify as an 'expressly authorized' exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding."[16] ICARA gives both state and federal courts power to hear Hague Convention petitions,[17] and in this way does not create a uniquely federal right.

Furthermore, the Barnstable court litigation will not frustrate this proceeding. Even if the state court made a custody determination before this court issued a judgment, that ruling would not bind this court. While the Rooker–Feldman doctrine, as well as the principles of claim and issue preclusion, typically preclude inferior federal courts from reviewing state court final judgments, the Eighth and Ninth Circuit Courts of Appeals have held that a federal district court considering a Hague Convention claim may set aside a state court custody ruling.[18] This conclusion is supported by the text of the treaty[19] and also makes intuitive sense. The point of the Hague Convention is to return an abducted child to a State of habitual residence so that the courts of that State can apply their own custody laws. Any determinations the Barnstable court makes under Massachusetts state law would not control this court's rulings, which must adhere to the legal standard put forth in the Hague Convention and ICARA.

15. *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (finding that the Civil Rights Act gives authorization for federal courts to enjoin state proceedings when they effect a deprivation of civil rights under color of state law).

16. *Id.* at 237, 92 S.Ct. 2151.

17. 42 U.S.C. § 11603(a) ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.").

18. *See Silverman v. Silverman*, 338 F.3d 886, 894 (8th Cir.2003); *Holder v. Holder*, 305 F.3d 854, 865 (9th Cir.2002) (" 'Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty.' " (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1085 n. 55 (9th Cir.2001))). *But see* Ion Hazzikostas, *Federal Court Abstention and the Hague Child Abduction Convention*, 79

N.Y.U. L.Rev. 421, 439–40 (2004) (criticizing these decisions).

It is important to note that even a ruling that the state court litigation will have no effect could be seen as violation of the Anti–Injunction Act. *See Atl. C.L.R. Co.*, 398 U.S. at 287, 90 S.Ct. 1739 (noting that "prohibiting utilization of the results of a completed state proceeding" violates the Anti–Injunction Act). However, in this unique class of case, where the this court's ultimate ruling on the merits must be based on the standards set forth in the Hague Convention and ICARA, it is appropriate to note, as have the Eighth and Ninth Circuits, that a state custody determination will not control the final analysis.

19. Hague Convention, art. 17 ("The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.").

Should the Barnstable court issue an order, this court would adopt the reasoning of the Eighth and Ninth Circuits and reject any asserted preclusive effect of that ruling. Thus, absent an express authorization from Congress, absent exclusive jurisdiction in the federal courts, and absent a risk of frustration should the state court proceed, there is absolutely no reason to believe that the first exception to the Anti–Injunction Act would apply in a Hague Convention case.

The second exception to the Anti–Injunction Act applies where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." [20] As just described, the Barnstable court proceeding will not interfere with this court's rulings. The second exception, therefore, does not apply. Additionally, the third exception clearly does not apply as, at this point, there is no determination of the merits or judgment to protect.

Accordingly, this court may not enjoin the Barnstable court from adjudicating this issue. Petitioner points to a recent Third Circuit case, arguing it holds to the contrary:

> More significantly to the case before us, the Hague Convention provides that any state court custody litigation be stayed pending the outcome of the Hague Convention litigation. Although ICARA does not contain a similar express provision, the purpose of the Hague Convention is to provide for a reasoned determination of where jurisdiction over a custody dispute is properly placed. Therefore, it is consistent with this purpose that it is the custody determination, not the Hague Convention Petition, that should be held in abeyance if proceedings are going forward in both state and federal courts. [21]

In that case, however, the Third Circuit reversed a district court for abstaining in a Hague Convention case, in favor of a state proceeding. The Third Circuit's opinion did not address the Anti–Injunction Act. Thus, while this language suggests that federal courts should not stay their own Hague cases, and that state courts should stay custody proceedings while Hague Convention cases are ongoing, it does not imply that federal courts have the power to order state courts to halt their proceedings. It is the Barnstable court that must evaluate the relevant language for itself to determine the extent of its power.

Petitioner has suggested at oral arguments that because Respondent is a party to this case, this court has authority to order her not to engage in the Barnstable court litigation. But, "[i]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties." [22]

The *Emergency Motion for Preliminary Injunction* is DENIED.

Respondent's *Motion to Clarify Scheduling Order*

Considering (1) the extensions of the trial date have allowed more time for discovery, (2) that no depositions have yet been completed, (3) this court's determination that discovery could be helpful in resolving the highly disputed facts, and (4) this court's conclusion that it continues to possess jurisdiction to oversee discovery, the fact deposition deadline shall be extended to June 8, 2007, and expert discovery may run until June 29, 2007. In the

**20.** *Atl. C.L.R. Co.*, 398 U.S. at 295, 90 S.Ct. 1739.

**21.** *Yang v. Tsui*, 416 F.3d 199, 203 (3d Cir. 2005).

**22.** *Atl. C.L.R. Co.*, 398 U.S. at 287, 90 S.Ct. 1739.

absence of a contravening order from the Court of Appeals, both sides will submit to discovery during the pending appeal.

Conclusion

Through Petitioner's appeal, the First Circuit Court of Appeals is considering the legal questions of whether or not Petitioner's appeal is viable, and if so, the proper legal standard for employing discovery to determine questions of disputed fact in Hague Convention cases. Continued discovery in this case will not disrupt that appeal, but rather will further the goal of securing a reasonably timely disposition of the claims in this case. Accordingly, Respondent's *Motion to Clarify Scheduling Order* [# 47] is ALLOWED.

Because the Barnstable court's proceedings will disrupt neither the status quo established by this court, the ongoing discovery, nor this court's ability to issue a final decision on the merits, the Anti–Injunction Act prohibits an injunction staying the Barnstable court action. Petitioner's *Emergency Motion for Preliminary Injunction* [# 31] is DENIED.

AN ORDER WILL ISSUE.